### TAPPAN *v.* BEARDSLEY.

1. It seems that, to establish the fact that a certain suit was brought, or the time of its commencement, the record of it may be used against one who was no party to it; but only so much as is necessary for that purpose is admissible.

2. Depositions which are incorporated into such a record are not admissible in another suit, where the witnesses are competent, and can be procured in the second suit.

3. The right and the opportunity in a person to cross-examine are essential to the use of such depositions against him.

4. Neither such depositions, nor the answer in chancery of the defendant, can be read in evidence as proof of their contents, in another suit against one who was neither party to the former suit nor privy to a party.

IN error to the Circuit Court for the Southern District of New York; the case being this:

John Beardsley and Horace Beardsley, merchants of Norwalk, Huron County, Ohio, brought an action in the court below against Lewis Tappan, of New York, for a libel.

. Tappan was the proprietor of what is now generally known as a "Mercantile Agency," the purpose of which is to collect information of the standing, character, and credit of merchants all over the country, and to communicate such information for reward to the business houses who may need it in their dealings with the former. And it was a communication made by Tappan to one of his customers concerning the plaintiffs, Beardsley & Co., that constituted the alleged libel.

The substance of that communication was that Beardsley & Co. had been sued, that J. Beardsley's wife was about to sue him for a divorce and alimony, in consequence of which he had put his property out of his hands, and that their store would probably be closed at once if the suit was brought.

To a declaration setting this out as the foundation of the action the defendant pleaded the general issue, and gave notice under the practice in New York of special matter to be offered in evidence. This special matter presented two defences: 1st, an attempt to bring the publication of the libellous words within the rule which protects privileged communications; and 2d, an assertion of the truth of the words published. This latter plea alone was the important one in the case as finally here decided.

On the trial the *plaintiffs* offered in evidence and proposed to read the *whole* record of a suit for divorce, brought in the name of John Beardsley's wife, against him, in Huron County, Ohio; a suit, which it seemed had been commenced some four or five months after the alleged publication of the libellous matter for which the suit below was brought, and some

time also after the commencement of the suit itself. The petition of the wife in the record thus offered to be read, alleged adultery. An answer of Beardsley (not sworn to) followed, denying the adultery, and alleging that the suit was not instituted by his wife or for her benefit, but that it was instituted by Tappan himself and by his counsel (through one Kennan, who, it was alleged, had been the secret informer and agent in Norwalk, of Tappan and his commercial agency) for the sole purpose of making good the slander which Tappan had published against Beardsley on that subject. With this petition and answer were the depositions of several witnesses; most of the depositions tending to show that Beardsley's wife was a woman of most violent, jealous, and impracticable temper, partially insane, perhaps, and that there was no ground for her petition for divorce. Finally, as part of the record, came the order of court dismissing the petition.

The circumstances under which this dismissal was made, were thus disclosed in one of the depositions certified with the record in divorce, and offered with it:

"S. F. Taylor, the attorney for Mrs. Beardsley, moved a continuance of the cause on the ground that some of his material witnesses were not in attendance, and could not be found. The motion was opposed by John Beardsley, and he then stated to the court, as also to Mr. Taylor, that all the witnesses named in their subpœna, and particularly those whom Mr. Taylor said were absent, were then in court; that Beardsley said that he had good reason to believe that the suit was not intended to be brought to a hearing, and that at his own expense and trouble he had procured the attendance of all Mrs. Beardsley's witnesses, to prevent a continuance.

"The court then overruled motion for continuance, and said that if Mr. Taylor had no other reason for continuance, he must proceed to a hearing. Whereupon Mr. Taylor abandoned the suit, and it was ordered by the court to be discontinued."

Another of the depositions appended to this record in divorce, and taken in that proceeding, was that of Mr. S. F.

Taylor, the attorney for Mrs. Beardsley, above named, himself. It thus ran;

S. F. Taylor, of lawful age, being by me first duly sworn, as hereinafter certified, deposes as follows:

*Question.* Have you ever seen the complainant?

*Answer.* I cannot answer if it has any materiality in the case, without revealing what belongs to me exclusively, as counsel for complainant.

*Question.* I do not seek to draw out any confidential communications made to you as counsel; I simply want to know whether you have ever seen complainant?

*Answer.* I cannot answer without revealing such facts as might lead to the inference of other facts, that belong to me as counsel.

*Question.* Do you refuse to answer the question, " Have you ever seen the complainant?"

*Answer.* I do, as her attorney.

*Question.* By whom were you retained as attorney for the complainant?

*Answer.* By the complainant, and by nobody else.

*Question.* Did she retain you in person, or by a third person?

*Answer.* I cannot answer that question without revealing facts which I have no right to reveal, as counsel.

*Question.* Have you ever seen the complainant before or since, or since the commencement of this suit?

*Answer.* I have seen her, or seen a person called Mrs. Beardsley.

*Question.* Where did you see her, and when?

*Answer.* I saw a lady that was called Mrs. Beardsley some time ago, but cannot tell the time when.

*Question.* How long ago?

*Answer.* I think about two years ago.

*Question.* Did you speak to her?

*Answer.* I did not.

*Question.* Have you ever spoken to her?

*Answer.* I cannot say that I have.

*Question.* Do you now recollect to have ever seen her except on the occasion above referred to?

*Answer.* I do not.

*Question.* Did you frame the bill in this case?

*Answer.* I did.

*Question.* Were you employed by her personally, or by some other person for her as her agent?

*Answer.* I cannot answer this question, in my opinion, without revealing facts that belong to me alone as counsel, and which as an attorney I have no right to reveal.

*Question.* I do not ask you to reveal a single confidential communication. I simply wish to know whether you are retained by the complainant in this case in person, or by some other party having an interest therein?

*Answer.* I have not seen the complainant in person, and I know of no other person, and have heard of none other that has any interest in this suit.

*Question.* Were you requested by any person to file the bill in this case?

*Answer.* I was spoken to on that subject, and told that complainant wanted me to act as her attorney in this case. But I was never requested to act in the matter for or on account of any one else?

*Question.* By whom were you spoken to?

*Answer.* From the course taken in this examination, and from the declarations of defendant, I do not believe I can answer it without revealing facts that are my own property as counsel, and that I have no right to reveal.

*Question.* You say you were spoken to to file a bill in this case; was that request a verbal or a written one?

*Answer.* It was verbal.

*Question. Was the request made by a man or a woman?*

*Answer. It was a man.*

*Question.* Where does he reside?

*Answer.* In Norwalk.

*Question.* What is his profession?

*Answer.* I can answer no question tending to show his identity without, in my opinion, revealing facts that I have no right to reveal as attorney.

*Question.* Do you know whether the person who requested you to file this bill is now or ever has been the reporter of Lewis Tappan's Commercial Agency, or Cleveland's Commercial?

*Answer.* I do not know anything of either of these agencies.

*Question.* How do you know that the person was authorized by the complainant to employ you to file a bill in this case?

*Answer.* I have no positive knowledge that she did authorize him.

*Question.* How then can you swear that you were retained by the complainant?

*Answer.* I can only say from the facts that I have been retained by nobody else, except in doing an errand, as I supposed that at my request the dates and circumstances necessary to file the bill, and that I think could not have been supplied by anybody else since finished, and that I have since received the names of witnesses and the facts to which they would attest in handwriting said to be hers, as I believe.

When this record in divorce, with the answer, depositions, &c., was offered in evidence on the part of plaintiff, the counsel of defendant objected on several grounds, which were overruled; and then when the plaintiff's counsel proposed to read the whole record the counsel of the defendant objected, and insisted that only so much thereof as showed the nature of the suit and the time of the commencement thereof could be read, and especially that the answer of John Beardsley, the defendant therein, could not be read against the defendant in this action. The objections were overruled, and the whole of the record was read to the jury, to which action of the court the defendant's counsel excepted.

In the suit below, also, the plaintiffs called as a witness one of the clerks of Tappan's own Mercantile Agency, and proposed to ask him whether Tappan had at the time of this alleged libel an agent or correspondent in Norwalk, Ohio; and if so, who he was. Tappan's counsel objected to the question, on the ground of immateriality to the issue; but the court overruling the objection, the question was put to him. The witness now declined to answer, for the reason, among others, " that his answer would tend to accuse or criminate *him* [the correspondent?—REP.] in a charge of an indictable misdemeanor." The bill of exceptions proceeded:

" But the judge ruled that the witness was bound to answer the question; and on his still declining so to do, he was adjudged by the court to be guilty of a contempt of court in the face of

the court, and was sentenced to be committed to prison for his said offence, there to remain until discharged by due course of law."

The jury found a verdict for the plaintiffs $10,000, and judgment was entered accordingly. The case was now here; the questions presented for review to this court arising from a bill of exceptions taken on the trial, and relating to the objections taken by defendant to the admission of evidence, and to the ruling of the court in instructing the jury.

*Messrs. C. O' Connor and William Allen Butler, for the plaintiff in error; Messrs. Casey and Bartley, contra.*

Mr. Justice MILLER delivered the opinion of the court.

In the admission of evidence we are of opinion that the court committed an error that must have contributed very largely to swell the amount of the verdict, which, without such testimony, was perhaps unusually and unjustifiably large, and might possibly have been for the defendant.

The error referred to was in the introduction of the record of the suit for divorce. The record thus read to the jury consisted of the petition of the wife of Beardsley for divorce, the answer of Beardsley, the depositions of several witnesses taken by Beardsley in that suit, and the order of the court dismissing the bill. The influence of this record on the verdict of the jury will be at once understood by a slight reference to its contents. It seems that the suit was commenced some four or five months after the alleged publication of the libellous matter for which this suit was brought, and some time after its commencement. Beardsley in his answer alleged that the suit was not instituted by his wife or for her benefit, but by Tappan, and by counsel employed by him, for the sole purpose of making good the slander which he had published against Beardsley on that subject.

The testimony of S. F. Taylor, who was the attorney that brought the divorce suit, is also a part of the record so read, and having been taken by Beardsley is as artfully contrived

as it could possibly be made, to confirm the truth of Beardsley's answer, that the suit was brought at Tappan's request without the authority of the nominal plaintiff; and all this is confirmed by his final appearance and dismissal of the suit for want of prosecution.

In short, no one can read that record and believe it without being convinced that Tappan, having slandered Beardsley, and being called into account for it, entered into a still more disgraceful conspiracy to establish the truth of what he had said by using the name of Beardsley's wife in a suit against him for divorce without her authority, and without any shadow of justice.

The effect of this in aggravating the damages to be recovered is too plain to require comment. And yet Tappan was no party to that suit; had no right to control or influence the making of that record; could not cross-examine the witnesses, all of whom were Beardsley's, nor take any exceptions to or contradict Beardsley's answer. It is difficult to conceive upon what principle the record of that suit was admissible for any purpose whatever in the trial of this one. If the *defendant* had introduced any evidence to show that a suit for divorce had actually been brought, in support of his statement that there was a rumor that it would be done, then it might have been competent for the *plaintiff* to show when it was instituted, as some evidence that no such rumor existed when Tappan so reported. But it does not appear that Tappan attempted to show in this suit that the divorce suit had ever been instituted. All *that* comes from the plaintiff, and it is difficult to see what relevancy it had to any issue before the court. If, however, a state of case could possibly have existed to justify the introduction by the defendant of that record for that purpose, it could be used for no other, and the answer of Beardsley and the depositions of the witnesses were not only irrelevant to the issue then being tried, but they were forbidden by other well-established rules of evidence:

1. Beardsley's answer was not sworn to, and was made with a probable view to its use against Tappan in this suit,

and was made when Tappan could neither contradict his statements nor cross-examine him.

2. As to Taylor's deposition, the fact that he was a competent witness in the present suit and could have been used by the plaintiff as such, is sufficient to exclude his deposition taken in another suit, even if Tappan had been a party to that suit. Still more forcible is the objection when the deposition was taken in a suit to which Tappan was no party, and on an occasion of which he had no notice, and when he had no right to cross-examine him or to controvert the truth of what he said.*

Two inconsistent reasons are given in support of the ruling of the court on this point.

It is said first that the depositions do not constitute a part of the record of the divorce suit, and were, therefore, not read in the present suit. And it is true that such depositions not read on the trial of the divorce suit could in no just sense constitute a part of the record. But it is clear to us from examining the bill of exceptions of the present case that the depositions were read to the jury as a part of the record of the divorce suit, and were so read against the objection of the defendant.

It is said, on the other hand, that they should have been read because they were a part of the record, and that when one part of a record of a suit is read all must be read.

When one party introduces and reads from such a record that which suits his purpose, the other party may read for his own benefit all that relates to that subject, or require the party introducing the record to do so. But we know of no rule which, because a party may use a record or part of it to establish a fact that can only be established by record, authorizes the same party to use everything else which may be found in the record, however irrelevant to the issue on trial, or however it may violate other well-established principles of the law of evidence.

It is possible that the plaintiff had a right to show that the

---

* Rutherford *v.* Geddes, 4 Wallace, 220.

divorce suit against him was brought long after the publication of the slander and after Tappan had been sued for it; and that for this purpose the record was admissible. But this by no means establishes his right to bring before the jury the entire merits of the divorce suit, the depositions taken in that suit which bear hardly upon Tappan, who was no party to it, and the answer of Beardsley making charges against Tappan, when the latter could make no reply to them.

Upon this question the case of the *Marine Insurance Co.* v. *Hodgson,*\* *Rutherford* v. *Geddes,*† and *Laybourn* v. *Crisp,*‡ are directly in point; and the authorities cited by Mr. Taylor in his work on Evidence,§ fully sustain the proposition laid down by him, that depositions in chancery can only be read when the bill shows that the cause was against the same parties, or those claiming in privity with them.

For this error the judgment of the Circuit Court is

REVERSED, AND A NEW TRIAL AWARDED.