INSUL—WOOL INSULATION CORPORATION v. HOME INSULATION, Inc.

INSUL—WOOL INSULATION CORPORATION v. FEDERAL INSULATION CO., Inc., et al.

Nos. 3830, 3831.

United States Court of Appeals Tenth Circuit.

July 25, 1949.

Claude A. Fishburn, Kansas City, Mo., and Emmet A. Blaes, Wichita, Kan. (M. R. Baker, Oklahoma City, Okl., on the brief), for appellant.

C. Earl Hovey, Kansas City, Mo., (Robert K. Everest and John R. Miller, Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Insul-Wool Insulation Corporation, as assignee of patentee, William J. Kroop, brought these actions against Home Insulation, Inc., and Federal Insulation Company seeking an injunction and damages for an alleged infringement of its Letters Patent No. 2,166,926, for "packing and insulating material". Upon a trial of the consolidated cases the trial court sustained the pleaded defense of invalidity on the grounds of prior knowledge and use of the patented product more than two years prior to the patentee's application for letters patent on March 1, 1935.

The court's findings and judgment are based in part upon depositions taken by other defendants in a former suit brought by this appellant involving the same issues of infringement. The depositions were admitted in evidence in these cases over the objections of the appellant on the grounds of hearsay. A preliminary question is whether the depositions were admissible to prove the crucial question of prior knowledge and use.

Some courts have taken the view that the fundamental and essential right of confrontation and cross-examination is impaired by the admission of testimony adduced in a former suit not between the same parties or their privies and not involving identical issues. See Wigmore on Evidence, Second Edition, Vol. 3, Sections 1360-1366; Rutherford v. Geddes, 4 Wall. 220, 71 U.S. 220, 18 L.Ed. 343; Tappan v. Bearsley, 10 Wall. 427, 77 U.S. 427, 19 L. Ed. 974; All v. All, D.C., 250 F. 120; Young v. Travelers Ins. Co., 10 Cir., 68 F.2d 83; Franzen v. E. I. Du Pont De Nemours & Co., 3 Cir., 146 F.2d 837; United States v. Aluminum Co. of America, D.C., 1 F.R.D. 48; Eller v. Mutual Ben. Health & Accident Ass'n, D.C., 1 F.R.D. 280; United States v. Silliman, D.C., 6 F.R.D. 262. See cases collected in Annotation, 142 A.L.R. 674, 675, 676. Another school of thought, led by Professor Wigmore, advances what he calls the "living principle of evidence" which, while recognizing the right of cross-examination as fundamentally essential to the development of truth in testimony, nevertheless contends that identity of interest is the controlling test of admissibility and that identity of parties does not serve the priniciple. Thus, it is said that "it ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and the determination of this ought to be left entirely to the trial judge." Wigmore on Evidence, Second Edition, Vol. 3, Sec. 1388; Mid-City Bank & Trust Co. v. Reading, D.C., 3 F.R.D. 320; Bartlett v. Kansas City Pub. Service Co., 349 Mo. 13, 160 S. W.2d 740, 142 A.L.R. 666; George v. Dav-

ie, 201 Ark. 470, 145 S.W.2d 729; Kreuger v. Sylvester, 100 Iowa 647, 69 N.W. 1059; North River Ins. Co. v. Walker, 161 Ky. 368, 170 S.W. 983; Security Realty & Development Co. v. Bunch, Tex.Civ. App., 143 S.W.2d 687; Young v. Reed, La. App., 192 So. 780. See cases collected Annotation 142 A.L.R. 673, 676.

■ The admissibility of such evidence is in accord with Rule 26(d) Federal Rules of Civil Procedure, 28 U.S.C.A., providing that at a trial any part or all of the deposition, as far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the depositions or who had due notice thereof. In our case the objecting party was a party to the former suit involving identical issues and was accorded full opportunity for cross-examination. Accepting this principle as the test of admissibility the trial court admitted the evidence, and we think rightly so.

The question whether the patent in suit arises to the dignity of invention is not in issue, and we have only the question whether that which the appellant has embodied in his patent was known and used more than two years prior to his application for patent on March 1, 1935. See R.S. Sec. 4886 as amended by the Act of March 3, 1897, c. 391, Sec. 1, 29 Stat. 692, as amended by the Act of May 23, 1930, c. 312, Sec. 1, 46 Stat. 376 and prior to the amendment of August 5, 1939, c. 450, Sec. 1, 53 Stat. 212, 35 U.S.C.A. § 31.

On March 1, 1935, William J. Kroop, the patentee, applied for a patent upon an "improvement in process of manufacturing packing and insulating material". In 1937 a second application was filed and in 1939 a third, each stating that it was a continuation of the preceding applications.

The specification of the first application shows the object of the proposed invention was to utilize waste paper, or like fibrous substance, by chopping or grinding the same to a minute, fluffy texture of a size sufficient to pass through a one-eighth inch mesh woven screen. The comminution was to be by hammer mill and to be treated, if desired, for fireproofing. The packing and insulation obtained from the fibrous, sheet-like substance was described as light, easily applied, fireproof, and very efficient for the purposes to which it might be adapted.

The specifications of the third application, after describing the paraphernalia used in the process of making the insulation, relates the movement and treatment of the paper or fibrous material and the comminution of the material by hammer mills so that the finally comminuted substance will pass through a screen of the critical size of one-eighth inch mesh, thereby producing a mass of heterogeneously arranged and interlocked slim, fuzzy, fluffy, fiberlike particles of varying length less than one-eighth of an inch and of generally uniform though irregular transverse cross-section area, some of said particles crossing each other along their length with the fuzz of one particle engaging the fuzz of the other, the fiberlike particles being definitely non-flaky and generally elongated.

The patent in suit was issued in 1939, pursuant to the third application, but since it was a continuation of the first and the claims thereof within or a division of the claims set forth in the first, the trial court held that "the two year public use or sale which may void a patent" under the then applicable statute, must be computed from March 1, 1935, the date of the first application for the letters patent citing Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 501, 23 L.Ed. 952; Godfrey v. Eames, 1 Wall. 317, 68 U.S. 317, 17 L.Ed. 684; Chapman v. Wintroath, 252 U.S. 126, 40 S. Ct. 234, 64 L.Ed. 491; Victor Talking Mach. Co. v. American Graphophone Co., 2 Cir., 145 F. 350; Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 8 Cir., 137 F. 80; Timken-Detroit Axel Co. v. Eaton Axle & Spring Co., D.C., 56 F.2d 651.

■■ The presumption of validity which attends a duly issued patent carries with it the necessarily implied presumption that it was not anticipated by prior knowledge and use. See Radio Corp. of America v. Radio Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163. The courts have expressed

many views as to the force of this presumption and the degree of proof necessary to overcome it, when the validity of the patent is in issue. But, throughout all the cases runs the concept that the proof must be more than a dubious preponderance—it must be strong, clear and convincing. See Radio Corp. v. Radio Laboratories, supra; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Zachos v. Sherwin-Williams Co., 5 Cir., 166 F.2d 79; Rokap Corp. v. Lamm, D.C., 10 F.Supp. 219, affirmed 4 Cir., 85 F.2d 873; United Kingdom Optical Co. v. American Optical Co., 1 Cir., 68 F.2d 637. Our question is whether the facts in these cases meet that test, or otherwise stated, are the findings and judgment of the trial court clearly erroneous?

There was proof to the effect that in 1930 M. J. Campbell of Denver, Colorado, under the name of Insul Fluf Corporation started manufacturing insulation material by grinding waste paper with a hammer mill and impregnating the same with sulphate ammonia for the purposes of vermin proofing and fire resistance; at that time he was using screens on the hammer mill from 1/8th to 1/4th or 3/8th inches, and numerous sales and installations were made during 1932 and the early part of 1933. Campbell continued in such business until his death in 1942, but his business was later bought and absorbed by the Insulation Service Company, who retained the tradename of Insul Fluf.

During the year 1932 Campbell had a salesman in his employ by the name of Gibbs. Sometime in January or February 1933 Gibbs interested a man by the name of Motley of Wichita, Kansas, in the manufacture and sale of an insulation material made by a process similar to that used by Campbell. Their product was manufactured by putting waste paper through a hammer mill, using 1/16th to 3/8th inch screen, but used a one eighth inch screen most of the time. In January 1933 Gibbs met the patentee, Kroop, and talked with him about becoming a salesman for his Company. He explained to Kroop that the insulation material was made from a by-product of wood pulp and gave him a sample for sales purposes, but did not tell him the exact ingredients. In March 1933, Kroop started his efforts to manufacture fireproof insulation from waste paper and in about the middle of the same month installed some of his product in a home in Wichita.

In 1933, and for sometime prior thereto, Bernard Rayor, under the name of Insul-Wool, was engaged in manufacturing insulation material from waste paper by grinding the same through a hammer mill. His business was sold to his brother in 1940, and in the equipment were screens ranging from one-eighth to one-half inches.

In 1931, Leslie P. Palmer started manufacturing insulation material from waste paper ground through a hammer mill, using a 1/8th inch screen. In August 1932 he formed a corporation under the name of Pal-O-Pak, which is still engaged in the manufacture of insulation material for use in refrigeration and home insulation material. A portion of the equipment and machinery for the plant was purchased in 1931 and, in addition to the motor power, there was a hammer mill and screen mesh of various sizes including a 1/8th inch screen. Bags of this insulation were displayed in August or September 1932.

■ The trial court's findings are not based entirely upon oral testimony recalled from memory. See Walker on Patents, Deller Edition, Vol. 3, p. 2028, Sec. 717. Numerous documents were introduced to corroborate and fortify the facts, dates and events testified to. There were many letters written to witness Campbell in 1932, testifying as to the effectiveness of Insul-Fluf; the articles of incorporation filed by Insul-Fluf in 1931; samples of Insul-Fluf and other insulation materials manufactured and sold during the crucial period were also introduced in evidence; there were invoices showing the sales of hammer mills and sales of sulfate of ammonia for fireproofing in 1931 to the various witnesses, and other types of instruments and documents. Furthermore, the testimony of Campbell, Rayor, Palmer and Gibbs, relied

upon by the trial court, was corroborated by other testimony.

Without more, it is clear that the judgment of the trial court rests upon competent and substantial evidence, and it is therefore affirmed.