**CHARLES H. DEMAREST, INC.**
v.
**UNITED STATES.**
**C.D. 2084; Protest Nos. 273168–K, etc.**

United States Customs Court,
First Division.
May 20, 1959.

Strauss & Hedges, New York City (Edward N. Glad, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (Richard E. FitzGibbon and Mollie Strum, New York City, trial attys.), for defendant.

Before OLIVER, C. J., and MOLLISON, and WILSON, Judges.

MOLLISON, Judge.

The above-enumerated protests were consolidated for trial and are directed against the action of the collector of customs in assessing duty upon merchandise described on the invoices as "Shina Wood Material" or as "Lattice Shade Material" at the rate of 25 per centum ad valorem under the provision in paragraph 1537(a), section 1 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, for manufactures of chip, not specially provided for.

The protest claim is for duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the said act, as modified by the Presidential proclamations relating to the Annecy Protocol of Terms of Accession to the

General Agreement on Tariffs and Trade, T.D.'s 52373 and 52476, for manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for.

The issue, therefore, is simply whether the merchandise is a manufacture of chip or of wood material other than chip, and turns on the question of the meaning of the tariff term "chip."

A sample representative of the merchandise involved is before us as plaintiff's exhibit 1. It consists of thin, narrow strips of wood, approximately one-fourth of an inch wide and 6 inches long. The parties are agreed that the strips of wood in plaintiff's exhibit 1 are less than one-sixteenth of an inch in thickness; that one-sixteenth of an inch is 1.6 millimeters; and that the imported merchandise is about 1.4 millimeters in thickness. The strips are joined to each other by what appears to be cotton cords woven under and over the strips and spaced about 1 to 1½ inches apart, thus making what, for want of a better term, might be described as a wooden fabric. This material is imported in widths of 2 to 8 feet and in rolls from 50 to 100 feet long.

There does not seem to be any question but that it is produced by veneering logs of wood to the thickness desired and then slicing or cutting the veneers into strips, such as those in the imported material, after which the cotton cords are interwoven with the strips. Witnesses for both the plaintiff and defendant are agreed that it is basically used in the manufacture of window covering products, such as shades, draperies, blinds, curtains, etc.

Also received in evidence is a sample agreed by the parties to be illustrative of at least one type of chip. This was marked plaintiff's exhibit 2 and consists of a wooden fabric material very much like plaintiff's exhibit 1, except that the wooden strips are thinner, being about 0.55 millimeter in thickness and are about three-sixteenths of an inch wide. There does not seem to be any question but that exhibit 2 is made by substan-

tially the same process as exhibit 1, and that it has primarily the same uses in the manufacture of window covering products. It has other uses, also, one being in the manufacture of plastic laminated materials, in which the strips are placed between sheets of vinyl plastic and the "sandwich" then molded under heat and pressure, and the resultant product used in the manufacture of handbags, floor screens, panels, or decorative trims. Another use is as background material for decoration.

It is the plaintiff's position that although exhibits 1 and 2 are made of the same materials, by the same process, and have at least one use in common, in the making of window covering materials, they are, for tariff purposes, separate and distinct commodities, exhibit 1, representing the merchandise in issue, being a woven wood material which, for the lack of a more specific tariff enumeration, is classifiable under the provision in paragraph 412, *supra*, for manufactures of wood, and exhibit 2 being chip wood material, properly classifiable under paragraph 1537(a) as manufactures of chip.

Plaintiff contends that there is a point at which strips of veneered material such as are shown in exhibits 1 and 2 are divided into woven wood material on the one hand and chip wood material on the other. Plaintiff contends that anything thicker than 0.9 or 1 millimeter is too thick to respond to the common meaning of the term "chip." As has been said, the imported merchandise is about 1.4 millimeters in thickness. Plaintiff also contends that chip material is not more than three-sixteenths of an inch in width.

While the defendant does not in so many words concede that there is any specific thickness or width which constitutes a demarcation between chip wood material and woven wood material, the testimony of its witness indicates that chip wood material is a thin, flexible slat or strip, which is one-sixteenth of an inch or less in thickness and "any width

that is reasonable to manufacture into the product for which it is used."

Preliminary to any discussion of the evidence and the law applicable to the subject matter, we find it necessary to dispose of a contention vigorously advanced by counsel for the defendant at the pretrial conference had in this matter, and in the brief filed on behalf of the defendant.

Counsel for the defendant moved to incorporate as part of the record herein the record in the case of Swanson-Lindstrand, Inc. v. United States, the decision in which is reported in 32 Cust.Ct. at page 526, Abstract 58171. The merchandise involved in that case is described in the court's decision as follows:

"* * * It consists of thin, narrow strips of wood, approximately ¼ or ⅜ inch wide and ⅟₁₆ inch or less in thickness, laid lengthwise and joined to each other by cotton cords or threads woven in over-and-under fashion, each row of cords or threads being spaced about 1 inch apart. * * * The merchandise is apparently imported in rolls from 1 to 3 meters wide and 25 to 50 meters long and is used in the manufacture of window blinds."

It also appears from the court's decision that the said merchandise was assessed with duty under the same provision in paragraph 1537(a) as was the instant merchandise and that claim was made by the plaintiff in that case that the merchandise was properly classifiable under the provision for manufactures of wood in paragraph 412, which is the provision on which plaintiff relies in this case.

Counsel for the defendant contends that the description of the merchandise in the Swanson-Lindstrand, Inc., case fits the merchandise at bar, and that, by reason of the identity of the assessments and claims made in that case and in the case at bar, there is a question of law and fact substantially the same in the two cases. Counsel's motion was made under the provisions of rule 20 of the Rules of the United States Customs Court, 28 U.S.C.A., reading as follows:

"Rule 20. Records Introduced in Evidence

"When a case is under consideration which involves questions of law and fact substantially the same in character as were involved in another case which has been previously decided, or tried and submitted to the court for decision, the record, or any part thereof, in such previous case may, within the discretion of the court, be admitted in evidence in the pending case upon motion of either party: *Provided*, That upon the request of either party desiring to re-examine or cross-examine one or more of the witnesses who testified in said previous case and who are within the jurisdiction of the court, the court shall issue subpoenas requiring the attendance of any such witnesses for such purpose: *And provided further*, That any such witnesses, when produced, shall stand in the same position with reference to both parties as they stood in the original case. Notice of intention to make such motion to incorporate any such record shall be served on the opposite party at least 10 days before trial, except that at trials at ports other than New York the notice shall be served at least 15 days before trial, unless such notice is waived. Service upon the United States of such notice shall be made upon the Assistant Attorney General in Charge of Customs at New York City."

The motion to incorporate the record was opposed by counsel for the plaintiff, primarily on the ground that the merchandise in the case of the record sought to be incorporated and that involved in the case at bar was not the same, and that, consequently, the issues could not be the same, and, secondarily, on the ground that a hardship would be imposed upon the plaintiff if the motion were granted, inasmuch as the witnesses who testified in the Swanson-Lindstrand, Inc., case were apparently located on the west coast of the United States.

The motion to incorporate the record was denied for the reasons stated by counsel for the plaintiff in his objection to the motion, and also for the reason that it patently appears that the parties in the two cases were not the same. Counsel for the defendant has urged that the court erred in this ruling, and, in effect, has asked that it be reversed.

In the brief filed in its behalf, counsel for the defendant points out that the rule, by its terms, does not require, as a condition to incorporation of a previous record, that the parties in the prior case and the instant case be the same, and states that "it would be serious error to read that limitation into the rule." Counsel also states—

> "No valid objection, substantial or technical, can be raised concerning the admissibility of the Swanson-Lindstrand, supra, record in the case at bar."

These pronouncements, and the obvious importance of the matter, prompt us to state our view thereon as follows:

The rule permitting the incorporation as part of the record in cases pending undecided before this court of the records or parts thereof in previously tried and submitted and/or decided cases has existed in this court and its predecessor for many years. Leerburger Brothers v. United States, 6 Treas.Dec. 844, T.D. 24715, G.A. 5437 (Oct. 6, 1903); Austin, Nichols & Co. et al. v. United States, 19 Treas.Dec. 898, T.D. 30872, G.A. 7082 (Aug. 11, 1910); Sheldon v. United States, 2 Ct.Cust.App. 51, 52, T.D. 31594; 17 C.J., page 655, Customs Duties, section 275, notes 79 and 80; Hughes, Federal Practice, section 5365. It is, as counsel for the defendant points out, a most important rule, and aids greatly in the disposition of a vast amount of litigation annually coming before the court.

It has, however, only one purpose, and that is *to prevent the unnecessary duplication of effort on the part of litigants and the court in the trial of matters the issues of law and fact in which have previously been the subject of trial or proceedings in the court.*

The great majority of cases coming before this court for adjudication involve the dutiable status or value of merchandise, i. e., present issues, the same as or subtantially the same as those which were involved in previously tried or decided cases.

Each case in this court represents an importation of the goods involved separate and distinct from all other importations of the same or similar goods. Very often many different importers are parties plaintiff in cases involving the same or substantially the same goods. The situation is most aptly described by the Supreme Court of the United States in its opinion in the case of United States v. Stone & Downer Co., 274 U.S. 225, at page 235, 47 S.Ct. 616, 618, 71 L.Ed. 1013, as follows:

> " * * * The business of importing is carried on by large houses between whom and the government there are innumerable transactions, as here for instance in the enormous importations of wool, and there are constant differences as to proper classifications of similar importations. * * * "

In that case, the Supreme Court held, in effect, that a final judgment determining the issues in a case brought by an importer plaintiff in this court does not stop either the Government, the same importer, or any other importer from prosecuting another case on the same issue or the same kind of goods, but concerning another importation. As illustrating the necessity and wisdom of this rule, the Supreme Court went on to say:

> " * * * The evidence which may be presented in one case may be much varied in the next. The importance of a classification and its far-reaching effect may not have been fully understood or clearly known when the first litigation was carried through. One large importing house may secure a judgment in its favor from the Customs Court on a question of fact as to the mer-

chandise of a particular importation, or a question of construction in the classifying statute. If that house can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another importing house may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. The importing house which has by the principle of the thing adjudged, obtained a favorable decision permanently binding on the government will be able to import the goods at a much better rate than that enjoyed by other importing houses, its competitors. Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion. In the same way, if the first decision were against a large importing house, and its competitors instituted subsequent litigation on the same issues with new evidence or without it, and succeeded in securing a different conclusion, the first litigant, bound by the judgment against it in favor of the government, must permanently do business in importations of the same merchandise at great and inequitable disadvantage with its competitors."

██ Thus, a determination of fact or law with respect to one importation is not *res adjudicata* and does not in and of itself control the determination of the issues with respect to another importation of the same kind of goods, or involving the same issue or issues, although the merchandise be different.

It frequently happens, however, that a final judgment of this court involves a decision with respect to a question of law or fact which is acquiesced in by importers in whose cases, then pending,'

the same issue arose, and by the Government, or, possibly, there is no present disposition on the part of importers, on the one hand, or the Government, on the other, to engage in further litigation on that issue.

Where the final determination in the prior case was in favor of the Government, and no other issue is involved in the pending cases, it has been the practice of plaintiffs or their representatives in this court to abandon the pending cases. Where, however, the final determination in the prior case was in favor of the plaintiffs, the disposition of the pending cases concerning the same issue has been facilitated and a multiplicity of trials avoided by the expedient of both parties consenting or agreeing to the incorporation, as part of the record in the pending case, of the record in the previous case. If no new issue or theory of the case has been raised by either party, the rule of *stare decisis* applies, and judgment results in the pending case as it did in the previously decided case.

It is to the credit, as demonstrating a practical approach to the situation, of the representatives of both the importers and the Government that this procedure has been followed in large numbers of cases, permitting them to be speedily brought to a fair and just termination.

██ *Where there is agreement between the parties with respect to the incorporation of a record in a previously tried or decided case,* no question is raised with respect to the fact that the parties plaintiff to the present and previous cases are the same or different.[1] The parties, in effect, agree that the testimony of the witnesses in the previous case, if called in the trial of the present case, or the exhibit in the previous case, if produced and received in evidence in the trial of the present case, or the proceedings, agreements, stipulations, concessions, admissions, motions, objections,

1. Objections to admission of record of prior trial and also requirement that parties be identical or the same may be waived. Proctor v. Preferred Accident Ins. Co. of N. Y., 6 Cir., 51 F.2d 15, 16; Globe Indemnity Co. of N. Y. v. Banner Grain Co., 8 Cir., 90 F.2d 774, 782–783; Mutual Life Ins. Co. v. Green, D.C., 37 F.Supp. 949; United States v. American Bead Co., 7 Ct.Cust.App. 132, T.D. 36456.

rulings, etc., had or made in the previous case, if repeated in the trial of the present case, would be the same.

*The situation, however, is quite different where there is no agreement as to the incorporation of the record, or part of it, in the previously tried or decided case.*

■ Here it must be kept in mind that we are dealing with a portion of the adjective law of evidence, and that while virtually all forms of evidence may be offered and received by *agreement* of the parties, nevertheless, the law will not always *compel* the reception of certain forms of evidence. Among the latter are records of former trials. Tappan v. Beardsley, 10 Wall. 427, 77 U.S. 427, 19 L.Ed. 974; Fresh v. Gilson, 16 Pet. 327, 41 U.S. 327, 10 L.Ed. 982; Rumford Chemical Works v. Hygienic Chemical Co. of N. J., 215 U.S. 156, 30 S.Ct. 215, 54 L.Ed. 137; Anderson v. Hultberg, 10 Cir., 247 F. 273; Metropolitan St. Ry. Co. v. Gumby, 2 Cir., 99 F. 192, 198–199; United States v. Aluminum Co. of America, D.C., 1 F.R.D. 48. Compare Federal Rules of Civil Procedure, rule 26(d), 28 U.S.C.A.; 5 Wigmore, sections 1386, 1388.

In the case of United States v. Bosca, Reed, MacKinnon Co., 24 CCPA 364, T.D. 48829, our appellate court showed that the then-existing rule of this court permitting the incorporation of records in previous cases represented an adaptation or modification, based upon the experience of this court over a number of years, of the general rule of evidence which relaxes the hearsay rule to permit the admission into evidence in pending trials of the records made in previous cases. The appellate court pointed out that the general rule was a "rule of necessity" which was available only where it is impossible to present the former witnesses for reexamination or cross-examination, citing 22 Corpus Juris, pages 427–443, sections 510 to 534, inclusive. See also 31 C.J.S. Evidence §§ 384–402, pp. 1187–1210; 20 Am.Jur., sections 689–706.

In the Bosca, Reed, MacKinnon Co. case, supra, the appellate court said that the element of necessity which was the basis of the general rule—that it is impossible to produce at the pending trial the witness or witnesses whose testimony was introduced at a previous trial—was not responsible for the rule promulgated by this court. Our appellate court thereby recognized that the reason for the rule in this court was not that it was *impossible* to produce the former evidence but that it was impractical and unnecessary so to do, and that justice could be speedily and fairly administered by adapting the rule by eliminating the requirement of necessity.

■ It has usually been considered that the general rule with respect to the admission in evidence of records made in former trials required, in addition to the impossibility of producing the witnesses who testified at the former trial, that there be substantial identity of (1) issues and (2) parties in the present and former trials. See C.J.S. sections above cited, and Jones, The Law of Evidence in Civil Cases, 4th Edition, volume 1, pages 618–620, sections 337, 338.

In the opinion of our appellate court in the Bosca, Reed, MacKinnon case, supra, it was noted that the rule then in existence did not provide the right of opposing parties or their counsel to reexamine or cross-examine any witness whose testimony appeared in the incorporated record. For that reason, the court held, that rule—

"* * * should be construed as being applicable only in cases where the parties to the pending suit were parties in the previous case, and where the merchandise is substantially the same and the issues are precisely the same, as in the case at bar."

From the language of the paragraph immediately following the foregoing, it appears that it was our appellate court's view that, where the party who objects to the introduction of a record in a previous case was not a party to the former suit, the rule would be applicable only if the said opposing party was afforded

the opportunity to reexamine or cross-examine the witnesses whose testimony is incorporated in that record.

Thus, although it would appear that our appellate court has never passed directly on the question of admissibility as evidence of records in former trials where the objecting party in the present case was not a party in the former case, there does appear in its decision in the Bosca, Reed, MacKinnon case, supra, at least a suggestion that *if* the Customs Court's rule with respect to the admission in evidence of records in previously tried cases made provisions for the right of the opposing party or his counsel to reexamine or cross-examine any witness whose testimony appeared in the offered record, under such circumstances, the requirement of identity of parties in the present and former cases would not be applied.

What is contained in the Bosca, Reed, MacKinnon case, however, is, as has been said, only a *suggestion,* and there is no indication how far, if at all, the court considered that in trials in this court a departure was warranted from the requirements concerning the identity of parties in the general rule of evidence respecting the admission in evidence of records in former trials.[2]

Wigmore, in his work on Evidence, 3d edition, volume 5, section 1388, while conceding the general application of the requirement of substantial identity of parties, suggests the subordination of the application of that requirement to the requirement of identity of issues, concluding:

"It ought, then, to be sufficient to inquire *whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has;* and the determination of this ought to be left en-

tirely to the trial judge * * *." [Italics quoted.]

Professor Wigmore, however, admits that the courts have not yet accepted "so broad a principle." An examination of the cases in State jurisdictions listed in the cited section and in the annotation to Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 160 S.W.2d 740, 142 A.L.R. 666, at page 673, as supporting the principle contended for by Wigmore, indicates that in many of them there was at least a practical or representative identity or privity of parties in the former and present cases. Certainly, in none of them was testimony given in a former trial admitted in evidence *against, and over the objection of, a party in a subsequent case* who was a complete stranger to the earlier litigation, as the present plaintiff is to the Swanson-Lindstrand, Inc., case.

When cases arising in the Federal jurisdictions are examined, it appears that, in some jurisdictions, there is a uniformity of decision against admitting such former testimony where the parties in the former and present suits are not the same. Fresh v. Gilson, 16 Pet. 327, 41 U.S. 327, 331, 332, 10 L.Ed. 982; Tappan v. Beardsley, 10 Wall. 427, 77 U.S. 427, 436, 19 L.Ed. 974; Litchfield v. Goodnow, 123 U.S. 549, 551, 8 S. Ct. 210, 31 L.Ed. 199; Rumford Chemical Works v. Hygienic Chemical Co. of N. J., 215 U.S. 156, 160, 30 S.Ct. 215, 54 L.Ed. 137; Metropolitan St. Ry. Co. v. Gumby, 2 Cir., 99 F. 192; United States v. Reading Co., 3 Cir., 183 F. 427, 442, modified on other grounds in 226 U.S. 324, 33 S.Ct. 90, 57 L.Ed. 243 and 228 U.S. 158, 33 S.Ct. 509, 57 L.Ed. 779; Irving Air Chute Co. v. Russell Parachute Co., D.C., 41 F.2d 387, reversed on other grounds in 3 Cir., 47 F.2d 130; O'Donnell v. United States, 9 Cir., 91 F.2d 14, reversed on other

2. Note the decision of our appellate court in United States v. Tausig & Pilcer, Chas. Redden, 18 CCPA 421, at page 425, T.D. 44681, pointing out that the question of the validity of the then-existing Rule XXIV of this Court relating to the admission in evidence of prior records had not then, or formerly, been properly raised.

grounds in 303 U.S. 501, 58 S.Ct. 708, 82 L.Ed. 980; Roucher v. Traders & General Insurance Company, 5 Cir., 235 F.2d 423; United States v. Aluminum Co. of America, D.C., 1 F.R.D. 48; Wolf v. United Air Lines, Inc., D.C., 12 F.R.D. 1; S. W. Anderson Co. v. Glenn, D.C., 43 F.Supp. 334, 338.

In some other jurisdictions, there is a tendency toward what is termed "the more liberal view," suggested by Professor Wigmore, supra, subordinating the requirement of identity of parties to that of identity of interest and opportunity for cross-examination. Rivera v. American Export Lines, Inc., D.C., 13 F.R.D. 27; Tobacco & Allied Stocks, Inc., v. Transamerica Corp., D.C., 16 F.R.D. 545; Insul-Wool Insulating Corp. v. Home Insulation, 10 Cir., 176 F.2d 502; Mid-City Bank & Trust Co. v. Reading Co., D.C., 3 F.R.D. 320; and First Na-

tional Bank in Greenwich v. National Airlines, D.C., 22 F.R.D. 46.

For a discussion of the evidentiary problem in re the principle contended for by Wigmore, see 5 Vanderbilt Law Review (April 1952), Federal Civil Procedure Rule 43(a), at pages 563–566.

But it is noted that in all of the cases where testimony given in former trials was admitted in evidence in subsequent cases, the identity of interest which moved the courts to follow the "liberal" view was where the causes of action which gave rise to both the former trial and the present trial *were based upon the same transaction or the same res.* Furthermore, in no case was such testimony admitted *against, and over the objection of,* a party who directly or substantially was not present and who did not have the right of cross-examination *at the time the former testimony was given.*[3]

---

3. It may be suggested that the present court rule with respect to the admission of former testimony provides an opportunity for a party-opponent to reexamine or cross-examine the witnesses who gave the former testimony. A close look at those provisions, however, shows that their efficacy is more illusory than real.

The rule contains the following language:

"* * * *Provided,* That upon the request of either party desiring to re-examine or cross-examine one or more of the witnesses who testified in said previous case and who are within the jurisdiction of the court, the court shall issue subpoenas requiring the attendance of any such witnesses for such purpose: *And provided further,* That any such witnesses, when produced, shall stand in the same position with reference to both parties as they stood in the original case."

So far as cross-examination is concerned, an opportunity to cross-examine a witness some time after he has completed his testimony in a prior case denies the cross-examiner much of the advantage and intrinsic value of cross-examination. On this point, Wigmore, op. cit., § 1368, under the caption "The Theory of Cross-examination," says:

"(a) The first [advantage secured by cross-examination] is that the cross-examination *immediately succeeds* in time the direct examination. In this way the modification or the

discredit produced by the facts extracted is more readily perceived by the tribunal. No interval of time elapses, to diminish or conceal their force. Proving the same facts by new witnesses, after others of the proponent have intervened, might lose the benefit, and the counsel's argument at the close might not be able to replace it.

"(b) But, chiefly, the advantage is that the cross-examined witness *supplies his own refutation.* If qualifying or discrediting answers are extracted from him, they are the more readily believed. No other witness' credit intervenes to add a contingency of mistake. If we believed the answers on the direct examination, we must also believe the answers on cross-examination. Moreover, the dramatic contrast of the former and the latter may multiply and even exaggerate the concrete probative effect of the facts extracted. The difference between getting the same fact from other witnesses and from cross-examination is the difference between slow-burning sulphurous gunpowder and quick-flashing dynamite; each does its appointed work, but the one bursts along the weakest line only, the other rends in all directions." [Italics quoted.]

Insofar as reexamination is concerned, Black's Law Dictionary, 3d edition, defines "reexamination" as:

One distinguishing feature between the situation which usually obtains in other jurisdictions and that which would obtain under rule 20 of this court is that, in other jurisdictions, what is generally offered is the former testimony or deposition of one or more witnesses (obviously those who testified or deposed in a manner favorable to the proponent of the motion to admit). It is more general in this court under rule 20 to offer the *entire record* in a previous case. In such a situation, it is obvious that if the prior record were admitted in evidence over the objection of a party-opponent, the *case in chief* of the latter would be considered to consist in part of the testimony of witnesses whom he did not call, had and has no opportunity to examine, and whose credibility he is disabled from attacking. It is highly questionable whether, under such circumstances, the constitutional requirements of due process of law would be satisfied.

The Supreme Court of the United States, in the Stone & Downer Co. case, supra, strongly upheld the right of each individual importer and of the Government to present his case without being bound by former *adjudications* on the same or similar issues. If this be so, it would seem to be strange if a party were, nevertheless, bound by the *record* (in the making of which neither he nor his privies participated) which led to the former adjudication.

There is much to commend the requirement of the general rule that the parties, as well as the issues, in the previous and pending cases be the same or substantially the same. To begin with, the approach of other parties or other

counsel in former trials to certain issues is not always the same as that of parties and counsel in pending cases. As was said by the Supreme Court in the Stone & Downer Co. case, supra:

"* * * The evidence which may be presented in one case may be much varied in the next. The importance of a classification and its far-reaching effect may not have been fully understood or clearly known when the first litigation was carried through. * * *"

Moreover, for one reason or another, parties or counsel in the former case may not have brought competent evidence of certain facts to light, may have made statements, admissions, concessions, etc., which would not be made by present parties or counsel, may have failed to avail themselves of valid objections, or have done or omitted to do many things in the trial of the former case inimical to the interests of the parties in the pending case.

There is no history of decision in the customs courts in connection with the court's present rule 20 requiring an interpretation that incorporation of prior records or portions thereof will be *compelled* over the objection of a party who was not directly or substantially a party to the prior case. The changes which were made in the then-existing rule after the decision of our appellate court in the Bosca, Reed, MacKinnon case, supra, were not couched in such language as would compel the conclusion that it was this court's intention to make such a departure from the general rule of evidence as would permit incorporation of a prior record over the objection of and

"An examination of a witness after a cross-examination, upon matters arising out of such cross-examination."

In view of the provision of the rule:

"* * * That any such witnesses, when produced, shall stand in the same position with reference to both parties as they stood in the original case * * *"

it would appear that the only privilege a party-opponent might have, with respect

to witnesses of a party to a former suit who stood in the same position as the present party-opponent does, would be to reexamine the said witnesses *only with respect to matters arising out of the cross-examination of those witnesses.* Presumably, if there had been no cross-examination, there could be no reexamination. Furthermore, there could be no reexamination with respect to matters brought out only on the direct examination.

against the interests of one who was a stranger to the prior case. The language—

" * * * That any such witnesses, when produced, shall stand *in the same position* with reference to *both parties* as they stood in the *original case*. * * * [Italics added.]"

lends itself readily to interpretation that the term "both parties" contemplates that the parties to the present and prior cases would be the same. It certainly does not necessarily infer that they would be different parties.

■ We are of the opinion that, as written, the present rule 20 of this court does not contemplate a departure from the general rule of evidence denying admission of former testimony over the objection of a party who was not either directly or substantially a party to the former case.

It is noted that objection to the incorporation of the record in the Swanson-Lindstrand, Inc., case was not made by counsel for the plaintiff in the present case on the ground of a difference of parties plaintiff in that case and the present case. However, the validity of the ruling denying incorporation did not depend solely upon the difference of parties in the prior and present cases, for two other grounds were stated by the court, in response to the request of counsel for the defendant, as supporting the ruling.

The first of these was that which formed one of the bases for the objection to the incorporation of the record made by counsel for the plaintiff, i. e., that a hardship would be visited upon the plaintiff in this case if the record were incorporated by reason of the fact that the witnesses who testified in the Swanson-Lindstrand, Inc., case were resident on the west coast, while the instant case arose and was being tried at the port of New York. Although not well delineated, it appeared that the hardship spoken of by counsel would be both financial and time-consuming, in requiring counsel for the plaintiff to travel to the west coast to "re-examine or cross-examine" the said witnesses.

With respect to the production of the witnesses, as required by rule 20, the record shows that it was the purpose of counsel for the defendant to produce only one of the witnesses who testified, presumably the witness who testified for the defendant, although there were two witnesses whose testimony was taken in the Swanson-Lindstrand, Inc., case. Moreover, it also appeared that counsel for the defendant had no intention of producing the witnesses in New York, where the instant case arose and was being tried, but intended to request transfer of the case to the west coast, which, of course, would submit the plaintiff to the very hardship complained of.

■ We are of the opinion that, under rule 20, the burden is upon the proponent of a motion to incorporate to produce all of the witnesses requested by the opposing party at the place where the trial in the pending case is being had, unless such requirements are waived by the opposing party.

Moreover, the said ruling was also based upon the fact that the merchandise in the two cases was not the same. It appears that the merchandise involved in the instant case is about 1.4 millimeters in thickness, while the merchandise involved in the Swanson-Lindstrand, Inc., case was actually 0.8 millimeter in thickness.

The exact thickness in millimeters or fractions of an inch of the material involved in that case was not necessary to a disposition of the issue, the issue as framed by the parties turning on the question of whether the material, whatever its thickness, was flexible enough to be woven, braided, or plaited. Consequently, in describing the merchandise, the court used a rather broad, approximate figure, i. e., "1/16 inch or less in thickness." The decision was certainly not intended as a holding that *all* material 1/16 inch or less in thickness was *ipso facto* chip material—it merely held that the particular material there involved was

flexible enough to be woven, and, consequently, under the applicable authorities, was chip. Unfortunately, it appears that the decision was taken as applicable to *all* material of *any* thickness up to one-sixteenth of an inch.

The issue in the present case turns on the claim of the plaintiff that there is a line of demarcation, to wit, 0.9 or 1 millimeter in thickness, and three-sixteenths of an inch in width, between chip and other thin wood material. By its contention, plaintiff concedes that material less than 0.9 millimeter in thickness is chip, so that it would appear that the record in the Swanson-Lindstrand, Inc., case, relating to material 0.8 millimeter thick could be of no materiality to the proof of the issue in the case at bar.

■ We think that some observations made by Herlands, J., in the hereinbefore cited case of First National Bank in Greenwich v. National Airlines, D.C., 22 F.R.D. 46, 49, in connection with the admission in evidence of former testimony, are most apt here:

*"The granting or denial of this motion rests within the sound discretion of the Court.* The guiding principle in such pre-trial matters is to save the time, effort and money of litigants and to expedite trials, with a view to achieving substantial justice. The approach is pragmatic and not theoretical. *Were this motion granted, the Court would thereby create more problems than it would solve.* The conclusion reached by the Court accords with the rationale and the holdings of the judicial decisions that have dealt with this particular problem of the use of prior depositions in a subsequent action." [Italics added.]

We might add an observation of our own that there seems to be some disposition on the part of the members of this bar in general to believe that the chief function of the rule permitting the incorporation of the records in former trials is to gain the effect of the *weight of the prior decision in the disposition of the pending case.*

The real reason for permitting the incorporation of the records in prior cases is to prevent the unnecessary duplication of trial effort and to facilitate the speedy disposition of numerous cases pending in the court. What is permitted to be received is the record *evidence* made in the former case—not the decision—provided it serves the purpose of the rule.

■ For all of the foregoing reasons, the ruling on the motion to incorporate the record in the Swanson-Lindstrand, Inc., case is adhered to.

■ The term "chip" has appeared in many successive tariff acts. It has been the subject of a number of judicial decisions, all of which have been consistent with the definition given by our appellate court in the case of Tuska v. United States, 1 Ct.Cust.App. 535, T.D. 31547, as follows:

"From the evidence we conclude that chip is made by splitting or shaving wood into thin, flexible, narrow strips. Considering the process of manufacture in conjunction with the definitions given, we are of the opinion that the chip referred to in paragraph 449 [of the Tariff Act of 1897] may be defined as flat, narrow strips of wood split or shaved to a thinness and flexibility which will permit of their being woven, braided, or plaited into a definite shape or form."

It is quite obvious from the brief filed on behalf of the plaintiff that it is its contention that the term "chip," as understood in the trade and commerce of the United States which deals in such merchandise, is defined as above, but that the definition is further qualified by fixing 1 millimeter as the maximum permissible thickness, and three-sixteenths of an inch as the maximum permissible width. There being no question of commercial designation involved, it appears that the testimony of plaintiff's three witnesses generally with respect to the aforesaid qualification of the definition of "chip" was offered as an aid to the court in the determination of the com-

mon meaning of the term, the implicit understanding being that the common and commercial meanings were the same.

We are not persuaded by the testimony offered by the plaintiff that the common meaning of the term "chip," as it has been judicially defined, at or prior to the passage of the Tariff Act of 1930, in paragraph 1537 of which the term under consideration appears, was qualified as claimed by the plaintiff. A total of four witnesses were called, three for the plaintiff, and one for the defendant. None of the witnesses had handled in a commercial way merchandise such as exhibits 1 and 2 or any material known to them as "chip" at or about the time of the passage of the Tariff Act of 1930. In fact, the longest experience any of the witnesses had with respect either to merchandise such as exhibits 1 and 2 or chip was 12 years prior to the date of his testimony, long after the enactment of the Tariff Act of 1930.

Our appellate court has consistently taken the position that where it has determined the common meaning of a tariff term, such meaning will be adhered to until a legislative change in the statutory enactment in question necessitates a changed determination of such meaning. United States v. Ben Felsenthal & Co., 16 Ct.Cust.App. 15, T.D. 42713. In the same case, the court pointed out that when Congress reenacts statutory language which has been the subject of judicial definition, it must be presumed that it ratified and adopted the judicial construction placed upon the language.

Such seems to be the situation here. The common meaning of the term "chip" was judicially defined in the Tuska case as far back as 1911, and the same term has appeared in substantially the same form in successive provisions in the Tariff Acts of 1913, 1922, and 1930.

It is, of course, well settled that the meaning of an *eo nomine* designation in a tariff act must be determined as of the date of the enactment of the act. Smillie & Co. v. United States, 12 Ct. Cust.App. 365, T.D. 40520. At that time, June 17, 1930, in this case, the meaning of the term "chip" had become settled law, by virtue of judicial decision and legislative ratification thereof.

If it is the plaintiff's contention that *at that time* the qualification it seeks to place upon the definition was actually part of the common meaning thereof, it has not shown that fact. If it is the plaintiff's contention that the term became qualified after the enactment of the Tariff Act of 1930, it is doubtful whether recourse to the courts can aid it in view of the decision of the Court of Customs and Patent Appeals in the Felsenthal case, supra. Certainly, on the showing made in the case at bar, no relief can be afforded the plaintiff.

For the foregoing reasons the protests are overruled, and judgment will issue accordingly.

OLIVER, Chief Judge (concurring).

I concur with the majority in their conclusions, overruling the protests and denying defendant's motion to incorporate the record in Swanson-Lindstrand, Inc. v. United States, 32 Cus.Ct. 526, Abstract 58171. In doing so, I do not agree that the record in a previous case may not be incorporated in a pending case, over objection, solely on the ground that the parties are not the same.

The rule under consideration (rule 20) is very clear and explicit in stating that the record, or any part thereof, in a previous case, may *"within the discretion of the court* [italics supplied], be admitted in evidence in the pending case upon motion of either party * * *." Exercising discretion in the application of the rule involves consideration of many different factors, so that whether or not a record should be incorporated is a matter to be determined from the facts and circumstances in each particular case.