BEFORE THE FIRST DIVISION, NOVEMBER 5, 1962

No. 67164.—P. L. Thomas Co., Inc. v. United States, protest 60/15834 (New York).

OLIVER, Chief Judge: The plaintiff, in this case, imported certain flat, wooden sticks, on which duty was assessed at the rate of 25 per centum ad valorem under the provision in paragraph 1537(a), Tariff Act of 1930, for "Manufactures of * * * chip." The protest claim is for duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the said act, as modified by T.D. 52373 and T.D. 52476, for "Manufactures of wood."

The facts are not seriously in controversy. The imported sticks, samples of which are before us as plaintiff's collective exhibit 1, are each approximately 5½ inches long, ¼ inch wide, and ⅟₂₀ inch thick, rounded at the ends. They are used as one-time coffee stirrers in luncheonettes and similar places, and that is apparently their only use.

The issue as framed by the parties is a simple one, whether or not the sticks are manufactures of that class of wood known as chip. If they are not such manufactures, they are unquestionably manufactures of wood and dutiable under the provision therefor.

The plaintiff bases its case entirely upon the so-called "preexisting material" doctrine in customs law. That doctrine is a rule of statutory construction to the effect that a tariff provision for "manufactures of" a given material presupposes that the material of which a manufactured article is made exists before the article itself comes into existence. Angel & Co. (Inc) v. United States, 15 Ct. Cust. Appls. 19, T.D. 42132. Plaintiff claims that the material of which the coffee stirrers was made was not chip.

The evidence on the question consists of the testimony of a vice president of the plaintiff company, which is engaged in the importation and exportation of raw materials, wood products, and general merchandise, and certain exhibits, including plaintiff's collective exhibit 1, above referred to.

The witness demonstrated his familiarity not only with the nature and use of the imported articles, but with the method of their production in the country of exportation, which method may be summarized as follows:

White birch logs, 18 inches or longer, are boiled in water for 10 or 12 hours. They are then removed from the water, the bark shaved off, and each log placed in a veneer-cutting machine. That machine has two turning centers, and the

log is rotated against a straight, sharp, veneer-cutting knife. The veneer comes out of the machine in a ribbon, approximately 10 to 20 feet long, which is of the same thickness as the finished product (approximately $\frac{1}{20}$ inch), and has the natural curvature of the log.

As the ribbon of veneer, which is equal in width to the length of the log, comes out of the machine, it is divided into narrower ribbons, each approximately the length of the finished product (approximately 6 inches), and the ribbons are rolled up "for easy handling." Two thicknesses of such ribbons are then fed at one time into a stamping machine, which has a die in the shape of the finished product and the articles here involved are stamped out.

Plaintiff contends that the ribbons of veneer, which are the material of which the imported articles were made, are not "chip" under the common meaning of that term, as it has been judicially defined. Cited, in this regard, is the case of *Tuska* v. *United States*, 1 Ct. Cust. Appls. 535, T.D. 31547, holding that chip—

* * * may be defined as flat, narrow strips of wood split or shaved to a thinness and flexibility which will permit of their being woven, braided, or plaited into a definite shape or form.

In the recent case of *Charles H. Demarest, Inc.* v. *United States*, 42 Cust. Ct. 180, C.D. 2084, involving certain wooden fabric material, this court said, concerning the foregoing definition:

* * * The common meaning of the term "chip" was judicially defined in the *Tuska* case as far back as 1911, and the same term has appeared in substantially the same form in successive provisions in the Tariff Acts of 1913, 1922, and 1930.

It is, of course, well settled that the meaning of an *eo nomine* designation in a tariff act must be determined as of the date of the enactment of the act. *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T.D. 40520. At that time, June 17, 1930, in this case, the meaning of the term "chip" had become settled law, by virtue of judicial decision and legislative ratification thereof.

It is apparent that decision in the case turns on whether the ribbons of veneer, which are fed into the stamping machine and which are the material of which the finished coffee stirrers were made, respond to the quoted definition of the term "chip." Plaintiff contends that its evidence establishes that such veneer was neither flat nor narrow, both of which are essential elements of chip under the definition.

The contention as to lack of flatness is apparently based upon the fact that, as the ribbon of veneer comes from the veneer-cutting machine, it has the natural curvature of the log and is rolled up for easy handling and, hence, it is argued, is not flat.

The contention as to lack of narrowness seems to be based principally upon the opinion of the single witness called, who stated that the material, i.e., the ribbons of veneer, from which the imported coffee stirrers were made, were not flat, narrow strips.

It does not seem to be open to question that the ribbons of veneer may properly be called "strips," since it has been held that—

* * * the essential characteristics of an article which entitle it to be called a strip are relative length against narrow width. [*John V. Carr & Son, Inc.* v. *United States*, 43 Cust. Ct. 290, Abstract 63200, affirmed in *Same* v. *Same*, 47 C.C.P.A. (Customs) 139, C.A.D. 747.]

Under that standard, the ribbons of veneer from which the imported articles were made are strips. They are 6 inches wide and from 10 to 20 feet long, i. e., are relatively narrow in width in comparison to their length.

Were they flat strips? The term "flat" obviously refers to a type of surface, being smooth or even, as distinguished from uneven or irregular. *Cf.* definition of

"flat" in Webster's New International Dictionary, 2d edition, 1945. It would appear that although the ribbons of veneer from which the coffee stirrers were made retained the natural curvature of the log and were rolled up for easy handling, they. nevertheless, had the flat surface which is exhibited in the ultimate finished product. A scroll or a chart of paper may be rolled up for easy handling and adopt the curvature of the roll, but it would still have a flat surface. We are of the opinion that the situations are analogous and that the ribbons of veneer were flat strips.

This leaves only the question as to whether they were narrow strips, as called for by the definition. As was said by Judge Lacombe, writing for the Circuit Court of Appeals for the Southern District of New York in the case of *United States* v. *Walter H. Graef & Co.*, 127 Fed. Rep. 688, 689 :

\* \* \* The word "narrow" is a relative term, of varying meanings.

Neither the statute nor the definition in this case provides a standard of what is to be considered "narrow" with respect to chip. The definition does make flexibility to the extent of being capable of being woven, braided, or plaited a requisite element of chip, but the record is silent as to whether the ribbons of veneer used in the production of the coffee stirrers at bar were flexible enough to be woven, braided, or plaited.

However, common sense would seem to indicate that a thin, wood veneer material, 6 inches wide, would not be narrow enough to be successfully braided or plaited, especially when the grain of the wood runs with the width, as it clearly does in the veneer ribbons. A braid or a plait would require a sort of doubling back of the material on itself, and such a veneer obviously would break under that treatment.

While it might appear that it would be possible to weave strips of the ribbon veneer material involved into a definite shape or form by a simple process of under-and-over weaving, we are of the opinion that the term "chip" could not properly be applied to the material in such a situation, nor the term "manufactures of chip" to the result of such a process.

We are led to this conclusion by a consideration of the decision in the *Tuska* case, *supra*, as well as of the decision of the Circuit Court for the Southern District of New York in the case of *Theodore Ollesheimer & Bros.* v. *United States*, 154 Fed. Rep. 167, also reported in 13 Treas. Dec. 310, T.D. 27972, on the subject of chip.

A reading of both of those cases is convincing that the narrowness and flexibility of the chip material which the courts had in mind were such as would enable the material to be woven into hats, bonnets, baskets, and such like. In his decision in the *Graeff* case, *supra*, Judge Lacombe took occasion to say—

\* \* \* It is easy to conceive of a tapelike fabric so narrow as to come within the definition, and equally easy to conceive of one so wide that it must fall without it.

We think a like situation appears here—certainly, 6 inches are too wide to label as "chip" a strip of material which is required to be so narrow that it could be woven into hats, bonnets, hoods, baskets, and such articles.

We, therefore, hold that the merchandise at bar was not made or manufactured of chip. There being no manifestation of legislative intent, judicial opinion, or administrative practice which would bar the application of the preexisting material rule to the provision for manufactures of chip, we are of the opinion that it must be held that, inasmuch as the merchandise at bar was not made or manufactured of chip, it is not properly classifiable under the provision for manufactures of chip.

In the brief filed on behalf of the defendant, it is argued that the provision for manufactures of chip has been held to be more specific than the provision for manufactures of wood, citing *United States* v. *Kromfeld, Saunders & Co.*, 7 Ct. Cust. Appls. 93, T.D. 36425.

While the issue in that case was similar to that in this case, in that certain ropings, which had been classified by the collector as manufactures of chip, were claimed to be properly dutiable as manufactures of wood, the factual and legal situations were not the same. The importer in that case conceded, and the court obviously agreed, that the provision for manufactures of chip was more specific, that is to say, more narrow in its scope, than the provision for manufactures of wood. The case ultimately turned on the question of whether the importer had established that the merchandise was *not* a manufacture of chip, and the court held that it had failed to do so. Consequently, the court found that the ropings were *both* manufactures of chip and manufactures of wood, and, under the rule of relative specificity, the former classification prevailed. In this case, however, the plaintiff has, in our opinion, established that the merchandise is not a manufacture of chip, and the question of relative specificity, and authorities on that question, are inapplicable to the situation.

On the record presented, the protest claim for duty at the rate of 16⅔ per centum ad valorem under paragraph 412, as amended, *supra*, is sustained, and judgment will issue accordingly.