BEFORE THE SECOND DIVISION, NOVEMBER 7, 1962

**No. 67167.**—The Green Fuel Economizer Co., Inc. v. United States, protests 60/115 and 60/327 (New York).

LAWRENCE, Judge: The above two protests were consolidated for trial.

The merchandise, with the exception of certain paraclone cells, in both protests consists of metal parts of a so-called low-level economizer, a device designed for use in connection with the boilers in a plant that generates electric power. The articles are described more specifically, *infra*.

The importations were classified by the collector of customs as articles, wholly or in chief value of steel, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 20 per centum or 19 per centum ad valorem, depending upon the date the goods were entered for consumption.

The protests, as originally drawn, claim that said merchandise should be classified as parts of machinery, not specially provided for, in paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802. The protests were duly amended by adding the following text:

> * * * changing the period at the end of the typewritten claim to a comma, and adding "T.D. 54108, or in the alternative at 13¾%, par. 353, as modified by T.D. 52739."

However, in its brief, counsel states—

> The only claim relied upon in this brief is that the imported articles, except certain paraclone cells covered by entry 971392 and protest 60/115, are classifiable under paragraph 372, as modified, as parts of a machine not specially provided for, such machine being the economizer as an entirety. The paraclone cells are not parts of an economizer, and the protest claim as to such cells is hereby abandoned.

The pertinent text of the statutes involved is here set forth.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   *         *         *         *         *         *         *

  Not wholly or in chief value of tin or tin plate:

*         *         *         *         *         *         *

    Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____[20% ad val. 6/30/57– 6/29/58 and 19% ad val. after 6/29/58]

Paragraph 372 of said act, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:

*         *         *         *         *         *         *

    Other * * *_____[12% ad val. 6/30/57– 6/29/58 and 11½% ad val. after 6/29/58]

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____The rate for the article of which they are parts.

The sole question presented to the court is whether the low-level economizer, of which the metal articles in controversy are parts, is a machine within the purview of paragraph 372, *supra.*

Stan Jewson, the only witness in the case, testified on behalf of the plaintiff. The following exhibits also were introduced.

Plaintiff's collective exhibit 1, pages 6 and 7, of "Green Premier Diamond Economizers," illustrating the design and construction of some of the parts.

Plaintiff's collective exhibit 2, pages 2 and 3, a pamphlet entitled "Green's Economiser Premier Diamond Type 15," illustrating the type 15 fuel economizer and some of the involved parts.

Plaintiff's illustrative exhibit 3, a pamphlet entitled "The Low Level Economizer." This pamphlet was limited to a schematic drawing and certain descriptive matter on page 5.

The following is the substance of the testimony of Stan Jewson. He is manager of the economizer division of the Green Fuel Economizer Co., Beacon, N.Y., the importer of the merchandise and manufacturer of power generating equipment, including fuel economizers. As a trained engineer, he had been associated with the sales, engineering, and development activities of the plaintiff company for about 20 years and was experienced in the design, manufacture, and installation of this type of equipment.

Jewson identified the imported articles specifically as tubes, bends, headers, bolts, joint rings, supports, tube plates, packers, sealing rings, and retaining rings, which he stated were illustrated in exhibits 1 and 2. The articles above described, together with housing casings, piping, valves, pumps, and a pressurization chamber, which were manufactured in this country, were designed and combined to make a low-level heat economizer unit in a power generating station in Dayton, Ohio.

The witness described the function of a low-level economizer as a heat exchanging device, designed to recover low-grade thermoenergy from the products of combustion of power boilers and transfer this energy to the airstream that is being fed into the boilers. Jewson stated that—

* * * Its main difference with other types of heat exchangers is that the energy which is being recovered is normally unrecoverable by conventional heat exchangers.

The witness further described the operation of an economizer as follows—

A low-level economizer comprises two separate heating exchangers, one heat exchanger is located in the flue system and the products from combustion from the boiler pass over this heat exchanger; the second heat exchanger is located in the air stream which is being fed to the boiler. Both these heat exchangers are connected by pipes into a closed circuit and a circulating pump is also located in the circuit. Water or a solution of ethylene glycol is pumped around the circuit and by so doing, thermal energy is transferred from the flue gas or products of combustion to the combustion air.

Certain valves are required in the circuit in order to maintain required temperatures, not only of the airstreams leaving the air side heat exchanger, but, as well, to maintain certain required temperatures of the circulating fluid entering the flue gas heat exchanger. This is illustrated on the diagram in exhibit 3. The valves above referred to are operated by compressed air and are essential to the efficient operation of the economizer. The only known use of the imported products under consideration is for the construction of the low-level economizer. The circulating pump may be operated either by electric motor or a diesel motor.

Briefly stated, the low-level economizer system is used as a part of the heat recovering equipment of an electrical generating powerplant.

Plaintiff contends that the subject articles are metal parts of a device, which is a machine within the purview of paragraph 372, based upon the meaning of the term "machine" ascribed to it by the court in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, as—

* * * a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion. * * *

It is argued that the low-level economizer, of which the imported items are parts, "utilizes and applies mechanical energy"; and that "It is a mechanical contrivance because a pump mechanism and temperature sensitive control valve mechanisms are essential elements, integral parts, and important features of the complete unit without which the entirety could not perform its exclusive function, the transfer of thermal energy from a fire-box to a fire-box intake."

Whereas, in the record before the court, there is mention of valves, manually operated and automatically operated, and reference to a pump, it is not clear whether said valves and pump are parts of the economizer in the true tariff sense of the word "parts," or if said articles are essential or desirable components in connection with the overall power generator plant. Careful consideration has been given to plaintiff's exhibits 1, 2, and 3, and nowhere therein is there mention of values and only in the schematic drawing in plaintiff's exhibit 3 is there mention of a pump. Furthermore, said mention of a pump in exhibit 3 does not indicate that the pump is "part" of the low-level economizer shown on said schematic drawing.

There is testimony in the record to the effect that *a low-level economizer is a system* and that it comprises two heat exchangers with the piping, pumps, and all the minor appurtenances, such as valves.

A consideration of the testimony clearly discloses that the heat exchangers and the Ljungstrom heating device are not parts of the fuel economizer. The record also discloses that the two separate heat exchangers are located outside the fuel economizer. In other words, the Ljungstrom device and the two heat exchangers, although a part of the system, are not parts of the fuel economizer. It appears further from the record that the valves (identified by the numbers "2" and "3" on exhibit 3) and the pump referred to by witness Jewson are also outside the fuel economizer.

It would appear, therefore, that the record is insufficient to support the claim of plaintiff that the fuel economizer in itself is a "machine" in the tariff sense and that the articles in controversy are parts of such machine.

Upon the record as a whole, we are of the opinion that plaintiff has failed to overcome the presumption of correctness which attaches to the decision of the collector. The protests are, therefore, overruled and judgment will issue accordingly.