(C.D. 4042)

BEAUTI-VUE PRODUCTS COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 6, 1970)

*Schwartz & Lidstrom* (*Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Irving A. Mandel* and *Thomas Fernandes*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This protest places in issue an importation consisting of lengths of woven thin wooden strips commonly used to make shades or draperies. The merchandise is invoiced as "Woven

Materials #5 Overlapping Basswood" and "¼ inch Basswood (Rounded Edge #7007)". It was classified under item 222.32 of the Tariff Schedules of the United States at the rate of 25 per centum ad valorem as woven materials of unspun fibrous vegetable materials suitable for use in making blinds, shutters, curtains, screens or shades, made of chip.

Plaintiff claims that the imported merchandise is not made of "chip" and is therefore classifiable under item 222.36 of said tariff schedules which provides for other woven materials of unspun fibrous vegetable materials, that is to say, those not made of chip. In sum, the sole dispute between the parties is whether or not this importation is made of "chip".

The relevant provisions of the Tariff Schedules of the United States, are as follows:

STATUTES

Woven or partly assembled material of unspun fibrous vegetable materials, suitable for use in making blinds, shutters, curtains, screens or shades:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |
| 222.32 | Of chip | | | | | 25% ad val. |
| * | * | * | * | * | * | * |
| 222.36 | Other | | | | | 10% ad val. |

As an aid to readers of the tariff schedules, the term "chip" is defined in the headnotes of schedule 2, part 2, subpart B. The headnote states that "chip" means, "flat, narrow, flexible strips of wood which are under $\frac{1}{16}$ inch in thickness and can be woven, braided, or plaited into a definite shape or form". The evidence as introduced herein by both parties is directed to the question of whether or not this importation meets the definition set forth above.

Plaintiff's president testified that the imported material represented by exhibit 1, consists of thin slats of basswood woven together by threads. He stated that the basswood slats do not possess sufficient flexibility or strength to be braided, plaited or woven into any articles possessing commercial value. Defendant's witness, the commodity specialist who passed on the merchandise in question, testified that he utilized basswood imported by the plaintiff and stipulated to be similar to that involved herein, and manipulated such basswood into a simple over-and-under woven form placed in evidence as exhibit B. Said manipulation was assisted by the soaking of the basswood in water.

In the opinion of this court, the merchandise involved herein does not possess the degree of flexibility envisioned by the legislators in their definition of "chip". We reach this conclusion by reason of a

careful examination of the material in question and a close scrutiny of the decisions of the court which resulted in the specific language used in the definition of "chip" appearing in the headnotes.

The decision from which the exact language of the headnote definition is taken is *Tuska* v. *United States*, 1 Ct. Cust. Appls. 535, T.D. 31547 (1911). In that decision the appellate court held that baskets made of a flat, split, thin wood were manufactures of chip. In the course of that opinion they expressed a view that chip refers to "flat, narrow strips of wood split or shaved to a thinness and flexibility which will permit of their being woven, braided, or plaited into a definite shape or form."

We view that definition as referring to a degree of flexibility far greater than that possessed by the instant importation, namely, one which permits manipulation into a shape or form possessing three dimensional or "sculptural" qualities. This view is reinforced by the opinion of the late Chief Judge Oliver in *P. L. Thomas Co., Inc.* v. *United States*, 49 Cust. Ct. 283, Abs. 67164 (1962). In that case plaintiff protested the classification of certain flat, wooden sticks as manufactures of chip. The court was of the opinion that the word "chip" required a degree of flexibility greater than that involved in simple under-and-over weaving, in fact, one which permitted weaving into hats, bonnets, hoods, baskets and such articles. The court noted that "[w]hile it might appear that it would be possible to weave strips of the ribbon veneer material involved into a definite shape or form by a simple process of under-and-over weaving, we are of the opinion that the term 'chip' could not properly be applied to the material in such a situation, nor the term 'manufactures of chip' to the result of such a process."

Our examination of the exhibits further reinforces our conclusions regarding the flexibility of the importation. The object created by the commodity specialist with the help of a water soaking resembles the under-and-over creations made by children from ice cream sticks and gives no true indication of the requisite flexibility which would result in true shapes or forms. The slats themselves are easily broken when manipulated in any but the most cautious manner and certainly do not meet the requirements of flexibility as set forth in the relevant decisions. We note in passing that almost any substance, certainly almost any wood, would, if cut as thin as the importation, possess a certain degree of flexibility. This flexibility is, however, a relative characteristic and does not meet the requirements of the statute.

In conclusion, we note that the dictionary definitions of the word "chip" past and present, uniformly support the view that the flexibility required is one which would permit the formation of three dimensional objects such as baskets or hats.

In all respects other than those related to the term "chip", the importation meets the description for woven or partly assembled materials of unspun fibrous vegetable material, suitable for use in making blinds, shutters, curtains, screens or shades. In view of the foregoing, we hold that the importation is properly classifiable under item 222.36 providing for "Other" importations meeting the above description and is properly dutiable at the rate of 10 per centum ad valorem.

Judgment will issue accordingly.