59 CCPA

**The UNITED STATES, Appellant,**

v.

**BEAUTI–VUE PRODUCTS COMPANY, Appellee.**

**Customs Appeal No. 5435.**

United States Court of Customs and Patent Appeals.

Nov. 11, 1971.

5. Explanatory Notes to the Brussels Nomenclature, volume 3, pages 1325–26 (1967). Item 84.45 of the Brussels Nomenclature is defined as "Machine-Tools for Working Metal or Metallic Carbides * * *" The Explanatory Notes state:

> The machine-tools of this heading are machines used for shaping or surface-working metal or metal carbides by either:
> (i) Cutting away or otherwise removing metal or metallic carbides (e. g. lathes, drilling, planing, slotting, milling or grinding machines).
> (ii) Changing the shape or form of the metal without removing any of it (e. g. presses, hammers, wire-drawing machines).

*Id.* at 1324.

Under the latter of these alternatives, titled as set forth in the text accompanying this footnote, is included:

> (9) Shearing, punching, blanking and notching machines, for carrying out various cutting operations on plates, sheet, strip, bars, etc.

*Id.* at 1326.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Joseph I. Liebman, New York City, for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellee. Earl R. Lidstrom, New York City, of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This is an appeal by the Government from the decision and judgment of the Customs Court, 65 Cust.Ct. 1, C.D. 4042 (1970), sustaining the importer's protest against the classification made by the Collector of Customs. We affirm.

The imported merchandise is composed of rolls of basswood slats, which slats are aligned in parallel relationship and joined one with the other by threads to give a woven product. The goods were invoiced as "Woven Materials #5 Overlapping Basswood" and "¼ inch Basswood (Rounded Edge #7007)." Each basswood slat is less than ¹⁄₁₆ of an inch in thickness. Window shades are fabricated from the merchandise.

The Collector classified the importation under item 222.32 of the Tariff Schedules of the United States (TSUS) as a woven product of unspun vegetable materials, specifically *of chip*, bearing a duty of 25 per centum ad valorem. The importer protested that the goods were not of chip and claimed the proper classification to be under item 222.36 TSUS as a woven product of *other* unspun fibrous vegetable materials with duty at the rate of 10 per centum ad valorem. The Customs Court agreed with the contention of the importer.

The pertinent statutory provisions are as follows:

| | | |
|---|---|---|
| Woven or partly assembled material of unspun fibrous vegetable materials, suitable for use in making blinds, shutters, curtains, screens or shades: | | |
| 222.30 | Of one or more of the materials bamboo, rattan, or willow ............... | * * * |
| 222.32 | Of chip ................. | 25% ad val. |
| 222.34 | Of raffia ................. | * * * |
| 222.36 | Other ................... | 10% ad val. |

The threshold issue in this case is whether or not the imported basswood slats are of "chip" within the meaning of the Tariff Schedules. Chip is defined in headnote 2(c), Schedule 2, Part 2, Subpart B as:

> [F]lat, narrow, flexible strips of wood which are under ¹⁄₁₆ inch in thickness and can be woven, braided, or plaited into a definite shape or form.

The slats are without dispute flat and narrow, and the thickness is within the statutory requirement. The flexibility and capability of being woven into a definite shape or form are at the core of the controversy.

The Customs Court held:

In the opinion of this court, the merchandise involved herein does not possess the degree of flexibility envisioned by the legislators in their definition of "chip". \* \* \*

The decision from which the exact language of the headnote definition is taken is Tuska v. United States, 1 Ct. Cust.Appls. 535, T.D. 31547 (1911). In that decision the appellate court held that baskets made of a flat, split, thin wood were manufactures of chip. In the course of that opinion they expressed a view that chip refers to "flat, narrow strips of wood split or shaved to a thinness and flexibility which will permit of their being woven, braided, or plaited into a definite shape or form."

We view that definition as referring to a degree of flexibility far greater than that possessed by the instant importation, namely, one which permits manipulation into a shape or form possessing three dimensional or "sculptural" qualities.

The thrust of the opinion of the court below is that the flexibility is determined by the ability of the product to be woven, braided, or plaited into a definite shape or form and that the intended form possesses "three dimensional" or "sculptural" qualities. Appellant, the United States, takes the position that the statutory requirement that the material be capable of weaving into a definite shape or form is satisfied if a flat mat formed by an under-and-over weave can be fashioned. Defendant's Exhibit D was introduced into evidence in the trial of this case to show that the importation has the flexibility required of chip. Said exhibit is a small mat formed by weaving the basswood slats under and over each other and is held together along the edges by plastic tape. The Customs Court did not feel that this simple structure evidenced the flexibility contemplated in the statutory provision.

As noted above, the Customs Court traced the statutory definition of chip back to the opinion of the predecessor of this court in Tuska v. United States. The court there rejected the Government's contention that chip was inclusive only of material suitable for fashioning into hats and bonnets. This argument was apparently derived from Theodore Ollesheimer & Bros. v. United States, 154 F. 167 (C.C.S.D.N.Y.1907) wherein the court approved of a dictionary definition which defined chip as:

[W]ood, coarse straw, palm leaves, or similar material split into chips and made by weaving into hats and bonnets.

The goods involved in *Tuska* were bags and baskets, and the court evidently was of the view that the *precise* shape, whether hats, bonnets, bags or baskets, is not limitative of the definition of chip. The essential attribute was held to be flexibility and the forming step a manifestation of that property.

In two previous cases, where the goods were apparently similar to the imported slats at bar, the Customs Court had expressed inconsistent conclusions on the sufficiency of the under-and-over weave as such a manifestation of flexibility. In Swanson-Lindstrand, Inc. v. United States, 32 Cust.Ct. 526, Abs. 58171 (1954), the testimony of a witness to the effect that the goods there imported could not be woven was not deemed persuasive. The court perceived that the material could be woven under-and-over to produce a matlike result and therefore held the merchandise to be chip.

In P. L. Thomas & Co. v. United States, 49 Cust.Ct. 283 (1962), relied upon by the Customs Court in this case, the record was silent as to whether the ribbons were flexible enough to be woven, braided, or plaited. The court understood braiding and plaiting to require a doubling back of the material on itself, the stress of which would have broken the veneer there at bar. It was recognized that it would be possible to weave under-and-over, but the court held

that not to be sufficient to satisfy the requirement of the tariff provision.

As between the opposing positions of the Government on the one hand and the Customs Court and appellee on the other, we adopt the latter. The judicial origin of the now statutory definition of chip was premised on an appreciation that the primary attribute is flexibility, with the ability to be worked into a definite shape only an indication of that attribute. The language "three-dimensional" and "sculptural" utilized by the Customs Court to further clarify "definite shape or form" lends no real certainty to the statutory provision and may be more restrictive than necessary. We would not say that a matlike structure formed by weaving under-and-over can never evidence the requisite flexibility of chip. Such a resulting product may itself be sufficiently flexible to prove the flexibility of the starting strips. We are more impressed with the finding of the Customs Court expressed as follows:

> Our examination of the exhibits further reinforces our conclusions regarding the flexibility of the importation. The object created by the commodity specialist with the help of a water soaking resembles the under-and-over creations made by children from ice cream sticks and gives no true indication of the requisite flexibility which would result in true shapes or forms. The slats themselves are easily broken when manipulated in any but the most cautious manner and certainly do not meet the requirements of flexibility as set forth in the relevant decisions. We note in passing that almost any substance, certainly almost any wood, would, if cut as thin as the importation, possess a certain degree of flexi-

bility. This flexibility is, however, a relative characteristic and does not meet the requirements of the statute.

To the extent that the Customs Court would include forming a matlike structure by under-and-over weaving which then could be manipulated in a "sculptural" manner, we can accept the proposition advanced in the lower court opinion. The mat produced by the Government in this case falls far short of any such capability. In the end it must be admitted that flexibility is a relative property and its determination necessarily is plagued by subjectivity. However, despite these limitations, the approach taken by the Customs Court is consonant with the intent of the legislature in adopting this particular definition of chip.

We find no merit in the Government's alternative contention that the importer has failed to bear the burden of proving the correctness of its claimed classification and that the Customs Court erred in holding that it did. On this record, it seems to us that a wood material must be a vegetable material, and it is undisputed that the slats involved are of an unspun fibrous material. The merchandise is "woven or partly assembled" as required by the Tariff provision at bar, and the evidence indicates that it is "suitable for use in making blinds, shutters, curtains, screens or shades." The goods are not properly classified in items 222.30, 222.32 or 222.34 which relate to exemplars of the generic category. Accordingly, item 222.36 TSUS is prima facie a correct classification in providing for "other" species of the generic material.

The judgment of the Customs Court is affirmed.

Affirmed.