## UNITED STATES *v.* HURST & CO. ET AL. (No. 2664)[1]

CONSTRUCTION, ESTABLISHED PRACTICE—GUMS—RESINS—BLEACHED SHELLAC.
That bleached shellac may have been for many years prior to the act of 1922 classified under the drug paragraph as a gum and denied free entry under the lac paragraph is no reason for excluding it from the lac paragraph of the 1922 act, since the dutiable-drug paragraph (34) of this act omits all reference to gums or gum resins. Paragraph 1604, Tariff Act of 1922, admitting free of duty "Lac, crude, seed, button, stick, or shell," is not limited to crude lac; and bleached shellac is classifiable under it rather than as an unenumerated manufactured article under paragraph 1459. *Hurst & Co.* v. *United States,* 12 Ct. Cust. Appls. 81, T. D. 40021.

United States Court of Customs Appeals, May 1, 1926

APPEAL from Board of United States General Appraisers, Abstract 49864

[Affirmed.]

*Charles D. Lawrence,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellees.

*Thomas J. Doherty* (*De Vries, Doherty, Davis & Lamb* of counsel) *amicus curiae.*

[Oral argument January 20, 1926, by Mr. Lawrence, Mr. Puckhafer, and Mr. Doherty]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:
This appeal involves several protests.

---

[1] T. D. 41584.

In the appraiser's answers thereto the merchandise is sometimes referred to as lac, bleached, in rolls or in powder, and sometimes as shellac in similar conditions. It was classified and assessed for duty as an unenumerated manufactured article under paragraph 1459 of the Tariff Act of 1922.

Importers protested, claiming free entry under paragraph 1604 of the act which provides for "Lac, crude, seed, button, stick, or shell."

The Board of General Appraisers sustained the protests. The Government appealed.

In this court an *amicus curiæ* appears in aid of the Government's appeal.

Precisely the same kind of merchandise was under consideration in *Hurst & Co.* v. *United States*, 12 Ct. Cust. Appls. 81, T. D. 40021. The record of the evidence in that case is incorporated in this and it is agreed that this case is, in effect, a retrial of the issues involved in that upon additional testimony introduced on behalf of the Government, none having been offered by it in the earlier case.

In that case we held the merchandise was entitled to free entry under paragraph 1604. Therein it was found, as appears by the opinion of Martin, Presiding Judge, that the merchandise was definitely, uniformly, and generally known in the trade and commerce of this country as one of the grades of shellac; that it was not the crudest form of the commodity; that after it was bleached it retained the name and uses of shellac and never acquired a new name, character, or use; that all kinds of shellac are in some manner cleaned of the dye which inheres in the lac from which they are produced; and that the bleached shellac was no more than lac from which the original dye or coloring matter has been removed by bleaching processes.

Upon those facts it was held as matter of law that, inasmuch as the provisions for shellac in paragraph 1604 contained no limitation or qualification of any kind, it included the merchandise in the case, and for that reason the importer's protest was sustained.

It will promote a better understanding of the issues here and of the evidence if we take cognizance of information on the subject of lac which may be found in the New International Encyclopedia and the Encyclopedia Britannica.

Therefrom it appears that lac is a resinous incrustation formed on the twigs and young branches of various trees by insects which infest them. The minute larval insects fasten on the young shoots, insert their long proboscides into the bark, and draw their nutriment from the sap of the tree. The insects exude a resinous secretion which envelopes their bodies and adheres to and incrusts the twigs or branches of the trees. This exudation is impregnated with a color secreted by the insects whose bodies remain in the incrustation. The exudation is gathered by breaking off the portions of the

tree thus incrusted. It then is known as stick lac and is the crudest. form of lac. In this condition it contains two commercial entities— the coloring matter and the resin—as well as wood and dirt which. must be eliminated to produce the commercial articles. This is. accomplished by repeated heating, kneading, washing, drying, and straining, or by the use of machinery in conjunction with some of the preceding processes. At some stage in the operations the color or dye is segregated, cut into small cakes, and packed for sale as lac dye. The lac itself is processed until it becomes the shellac of commerce. Depending upon the thoroughness with which the dye has been removed, it may be either ruby, blond, or white shellac,. the latter resulting from bleaching the same with chemicals.

During the various processes to which the crude material is sub-- jected it becomes in turn seed lac, button lac, and shell lac. The more completely the dye has been removed from the lac the more desirable and more valuable the latter becomes. It is devoted to a. great number of uses, especially in the manufacture of varnishes.

In the instant case the Government called two witnesses in con- nection with whose testimony illustrative Exhibits A, B, C, D, E,. and F were introduced in evidence. The word "illustrative" will generally be omitted in hereafter referring thereto.

Exhibit A represents stick lac. Exhibit B is seed lac, which is the same substance as Exhibit A but in granular form and from which the wood has been removed. Exhibit C is in the form of solid, dark- colored pieces of lac known as "garnet lac" and is further processed then Exhibit B. Exhibit D is thin, flaky, broken-up pieces of lac further processed than Exhibit C and of lighter color. It was. introduced as representative of orange shellac, sometimes called T. N. shellac, T. N. being understood to mean "truly native." Exhibit E is in very small, granular forms or in powder. It is. lighter in color than Exhibit D and is known as kiln-dried bleached shellac. Exhibit F is about the color of Exhibit E and is in a solid form called a hank or roll. It contains some 25 per centum of mois- ture. The last two exhibits represent the imported merchandise.

The Government's witnesses in substance agree that these last two· exhibits are bleached lac or bleached shellac, and that they represent. lac with the impurities, including the color, removed without chang- ing its nature. In their imported condition they are ready for use as material in the many diverse uses to which shellac is applied.

The witnesses for the Government gave no evidence as to the various processes applied in reducing the lac to the form of Exhibits B, C, and D, but testified fully as to those employed in producing Exhibits E and F which, in substance, are bleaching processes.

Both the Government and *amicus curiae* contend that paragraph 1604 was designed to admit to free entry crude lac only.

The Government's brief proceeds upon the theory that Congress had in mind in enacting paragraph 1604 that the lacs represented by Exhibits A and B only are crude, and that those represented by Exhibits E and F are not crude. What may be the status in that respect of the lacs represented by Exhibits C and D the Government does not state, apparently leaving the door open to the claim that they are dutiable because not crude.

*Amicus curiae* contends that the lacs represented by Exhibits A, B, C, and D are crude and that those represented by E and F are not crude and, therefore, dutiable as assessed.

The witnesses introduced by the Government testified that, in their opinion, the merchandise represented by Exhibits A, B, C, and D were all crude lacs. Just why Exhibits C and D, which it is quite evident have been subjected to considerable processing, represent crude lacs, and those represented by Exhibits E and F, which have been further processed for the purpose only of removing the color, do not, the witnesses did not explain, nor do counsel.

If we were to hold that crude lacs only were covered by paragraph 1604, the case of *United States* v. *Sheldon*, 2 Ct. Cust. Appls. 485, T. D. 32245, would strongly support the view that the bleached lac or shellac here was crude. In that case purified resin, known in commerce as rosin, and being one of the highest grades of that article was, by a majority of this court, held to be crude resin on the ground that nothing had been done thereto except "to get the resin by itself."

But we are of opinion that paragraph 1604 is not limited to lacs that are crude. In terms it covers shell lac, which clearly means shellac.

See Webster's New International Dictionary defining lac and shellac where the words shell lac and shellac are interchangeably used.

The rule that where a general term without limitation is used in the statute to describe an article it must in the absence of a contrary commercial custom, be applied in its broadest significance and held to include every kind of merchandise properly referable thereto is so firmly established that discussion is unnecessary. *Schade & Co.* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002, and cases therein cited. See also our opinion in the earlier *Hurst & Co.* case.

That rule controls here. The merchandise is shellac and nothing else. Shellac is included in paragraph 1604. The fact that it is bleached does not affect its classification.

It is insistently urged, however, as it was in the earlier case, by both the Government and the *amicus curiæ*, that merchandise like that now under consideration has long been held to be dutiable and, therefore, that it can not have been the intention of Congress in enacting the Tariff Act of 1922 to allow free entry thereto.

In this connection it appears that in 1891 the Treasury Department, for the purpose of securing uniformity of practice, directed the collector at the port of Boston to discontinue admitting bleached shellac to free entry under paragraph 626 of the act of 1890 providing for lac-dye, crude, seed, button, stick, and shell, but to classify it under paragraph 24 of that act as a gum advanced in value or condition by refining or grinding, etc.   T. D. 11909.

And further that in 1895, T. D. 15845, G. A. 2945, the Board of General Appraisers considered the classification of an article found by them to be commercially known as white shellac and not the substance known commercially as lac-dye, crude, seed, button, stick, or shell, to be a drug and a gum advanced in value or condition by refining or some other process of manufacture and not edible, to be dutiable under paragraph 16½ of the tariff act of 1894 which provided for such a drug and gum.

It is argued that from that time until the enactment of the Tariff Act of 1922 the administrative practice must have been to impose a duty on bleached shellac, from which it is insisted that the same must still be dutiable.

How bleached shellac has, in fact, been classified since T. D. 15845 does not appear.   It may be presumed, however, for the purposes of this case, although it is difficult to understand upon what theory it was so therein classified, that such classification was adhered to during all the subsequent tariff acts down to and including that of 1913, because they have all contained provisions in the dutiable-drug paragraphs similar to those of paragraph 16½ of the act of 1894.

But in the Tariff Act of 1922 the dutiable-drug paragraph, 34, omits all reference to gums or gum resins.   Hence it is apparent that the merchandise here is not classifiable thereunder, nor is it so claimed.   It follows, therefore, for the reasons hereinbefore set forth, that this bleached shellac is classifiable as shellac under paragraph 1604 as claimed by importers.   Any previously prevailing administrative practice, whether erroneous or not, of assessing it as a drug and gum advanced in value or condition, can, in view of the change in the statute, be of little aid in now determining its proper classification.   We find no reason for departing from our conclusion in the former case.

Importers also contend, as in the earlier case, that if the merchandise is not allowed free entry under paragraph 1604, it is, nevertheless, entitled to the same privilege under paragraph 1584 of the act as a gum or gum resin not specially provided for.   That issue has been quite fully argued by counsel upon both sides and it may be noted that witnesses below, both those introduced by the Govern-

ment as well as by the importers, sometimes refer to the merchandise here as a gum.

In view, however, of the conclusion already reached, we expressly reserve opinion on this issue.

The judgment of the Board of General Appraisers is *affirmed*.