ROBINSON–GOODMAN CO. (INC.) *v.* UNITED STATES (No. 3037[1])

United States Court of Customs Appeals, June 11, 1928

*Gibboney, Johnston & Schlechter* (*Breckinridge Long, William A. Rodenberg, Henry Alan Johnston,* and *L. E. Schlechter* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[1] T. D. 42842.

244

[Oral argument April 12, 1928, by Mr. Rodenberg, Mr. Johnston, and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case consists of a large variety of articles embraced in two shipments, one brought by the steamship *De Grasse* and the other by the *Deutschland*, and covered by two entries and protests, each of which presents the same issues. The importations were in the form of artificial flowers, fruits, and leaves represented by some 36 different exhibits. They were classified and assessed by the collector at 90 per centum ad valorem under that part of paragraph 1430 of the Tariff Act of 1922 providing for a large number of articles beginning with—

Laces, * * * nets and nettings, * * * veils, veilings, * * * neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, *trimmings*, fringes, gimps, *ornaments;* braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, * * *. (Italics ours.)

The answers to the protests, made part of the record, state that the merchandise consists of trimmings or ornaments in the form of flowers, fruits, or leaves, composed of silk, cotton, metal, or other yarns, threads, or filaments, and that it was returned for duty under the provision for trimmings or ornaments of yarns, threads, or filaments under paragraph 1430. The report of the collector states that the duty was assessed at the rate provided in the Tariff Act of 1922 for imported merchandise of the kind described by the appraiser.

Importer protested the classification, alleging that the merchandise was dutiable at 60 per centum under paragraph 1419 of the act or at 75 per centum under paragraph 1430. The latter claim, however, is not urged in this court, and it was, as we understand, abandoned in the court below.

Paragraph 1419 is long, and we quote only the relevant part thereof.

* * * artificial or ornamental fruits, vegetables, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for, 60 per centum ad valorem; * * *.

In *Blumenthal & Co.* v. *United States*, 14 Ct. Cust. Appls. 17, T. D. 41531, we held that artificial flowers, made of silk or cotton yarns, threads, and filaments, were classifiable under said paragraph 1430.

When the instant protests came on for hearing before the United States Customs Court reference was made to that case and Mr.

Johnston, counsel for importer, stated that he intended to show that the words "trimmings" and "ornaments" as used in that paragraph referred to specific things; that it would appear that the samples which he expected to offer in evidence were a separate and distinct class of merchandise—artificial flowers—and were not in fact trimmings and ornaments. On being interrogated by Mr. Abeles, counsel for the Government, and by Justice Fischer, Mr. Johnston said that the samples in the instant case were not the same as in the Blumenthal case. He then proceeded to call a witness, Mr. Robinson, a member of the protesting company, who testified that the merchandise covered by two different importations were in issue, one importation having been brought here by the steamship *Deutschland* and the other by the *De Grasse*. The witness produced some 36 samples as typical of the various classes of goods covered by the importations. His undisputed testimony as to whether or not these samples represented the importations was as follows:

Q. I have samples here which you have marked "the *Deutschland* entry 4761, steamer *Deutschland*, August 9, 1926"; does that correspond?—A. That number corresponds with the goods that were on that invoice.

Q. In other words——A. I can not say whether this is particularly out of that particular invoice, but it represents by number the article that came in on this invoice.

Q. You have a certain number for each article?—A. We have item number for each article.

Q. And that item number corresponds to the piece of merchandise that came in under that invoice?—A. Yes, sir; this is a sample of the same item that came in on that particular number on this particular invoice.

Q. Are all these samples the same?—A. All of these samples are represented in the same way.

Q. Does one item number always represent the same article of merchandise?—A.    sir.

Q. So that if you have an item number corresponding here it must be the same item?—A. It is the same item number.

Q. Here is an invoice that came on the *De Grasse*, entry number 826293, protest number 195978–G.—A. Yes, sir.

Q. Is that one of the items, or does that item number correspond to the number of an item on that invoice—that is, item 7056?—A. Yes, sir.

Q. And is that the same as to all these flowers which are marked "*De Grasse*"?—A. *De Grasse;* yes, sir.

Q. And then these other flowers marked "the *Deutschland*" came in or else represent identical samples of flowers that did come in on the *Deutschland?*—A. Yes, sir.

Mr. JOHNSTON. I offer these in evidence.

Mr. ABELES. There are some items on these invoices, Mr. Johnston, for which you have no samples. I checked them up yesterday.

Mr. JOHNSTON. We will make no claim on those.

Mr. ABELES. All right.

Justice FISCHER. You limit your claim to the numbers covered by these samples?

Mr. JOHNSTON. Yes, sir.

Mr. ABELES. With the understanding that the question of component material of chief value is not involved, the Government has no objection to the samples.

Justice FISCHER. Let them be marked.

(The same were received in evidence and marked, respectively, "Exhibits 1 to 36," inclusive, of this date.)

The record then contains various colloquies between counsel, and between counsel and the court, which it is unnecessary to mention. Numerous offers to prove were made and excluded. Among others importer offered

to prove that these flowers are not made of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213 in this act.

The record then proceeds:

Mr. ABELES. If that is the case, * * * I withdraw my consent to agreeing that these are the samples of the merchandise imported, because it goes to the component material.

Justice FISCHER. Do you insist on trying to prove the component material?

Mr. JOHNSTON. I wanted it to appear on the record in order to differentiate these two classes of goods.

Justice FISCHER. Then we will have to exclude the samples, unless you bring the identical merchandise before us. If the question is component material of chief value we can not accept these samples. We accepted them because we understood it was merely an issue of law, and the samples would be taken as representative.

Mr. JOHNSTON. The issue is not of chief value.

Justice FISCHER. They are not made of paper; they are made of some kind of fabric.

Mr. JOHNSTON. I want to show they are not made of yarns, threads, filaments, tinsel wire, lame, bullions, beads, bugles, spangles, etc.

Justice FISCHER. We will sustain the objection or exclude the samples, just as you want.

Mr. JOHNSTON. Exception.

The offered evidence was excluded; the samples were not.

The samples were clearly admissible, regardless of Mr. Abeles' above-stated "understanding" when they were received. The court could not thereafter lawfully exclude them over importer's objection. The excluded evidence was admissible. It tended to establish that the component material of the exhibits was not any one of the materials necessary to warrant classification under paragraph 1430. Its purpose was not to show the *chief value* of any component, but was to show what in fact such component was.

Thereafter many other offers of evidence were made on behalf of importer, which were excluded on the objection of the Government, concerning which error is alleged here. To consider them all in this opinion would extend it to an unreasonable length. Among them was an offer to prove that the artificial flowers involved in this case were not trimmings or ornaments; another, that they were made out

of woven cloth; another, that trimmings and ornaments were certain specific things, dealt with as such in the wholesale trade throughout the United States prior to and since 1922, and did not include artificial flowers.

We are unable to see why, as the case stood before the court below, such evidence was not admissible, but refrain from discussing the issues raised thereby, because we are clear that the exclusion of the evidence covered by the offer first hereinabove referred to was reversible error.

The Government's chief argument here is, and the decision below seems to proceed upon the theory, that the *Blumenthal* case is *res adjudicata* of the issues here against importer. This position is unsound, because in that case it was not only established, but practically conceded, that the merchandise was composed in chief value of textile yarns, threads, or filaments, while in the case at bar it is asserted that they are not so composed, and that they are not composed of any of the component materials named in paragraph 1430, viz, yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose.

Under well-settled customs practice, the decision in the *Blumenthal* case was not necessarily *res adjudicata*, even though the same question of law was involved. See *Bouttell & Sons* v. *United States,* 8 Ct. Cust. Appls. 409, T. D. 37666; *United States* v. *Hurst & Co.,* 14 Ct. Cust. Appls. 85, T. D. 41584. In other words, in customs practice, notwithstanding what has been decided in a former case, a new record may be made in a later one which, for practical purposes, results as a retrial of the issues in the former case which is not then regarded as *res adjudicata* See *United States* v. *Downer,* 274 U. S. 225. Importer here has already been denied that right.

We are strongly impressed with the view that in the case at bar importer has not had its day in court.

The record shows that practically the only evidence that was received was the 36 samples and testimony identifying them, so that there was nothing for consideration before the court below other than the samples; and, of course, the papers constituting the files in the case. The latter do not in any way control the issues. The court overruled the protests wholly on the supposed authority of the *Blumenthal* case, saying that it presented "precisely the same issues of fact and law as were decided" in that case, omitting, as we have heretofore pointed out, to notice that the importer contended, and was trying all the time to show, among other things, that the merchandise was not the same.

In pointing out specific reasons for reversal we do not intend to suggest that others are not apparent, or to indicate any limitation

as to the rights of importer in the introduction of evidence at a retrial.

The judgment below is *reversed* and the cause *remanded* with directions to grant a new trial.