(C.D. 2438)

GREAT LAKES PAPER COMPANY ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 2, 1964)

*Brooks & Brooks* for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Alfred A. Taylor, Jr., Samuel D. Spector*, and *James F. O'Hara*, trial attorneys), for the defendant.

RAO, Judge: The seven protests here involved, which have been consolidated for purposes of trial, relate to several importations of merchandise invoiced generally as " 'Safir' Lampshade Parchmentized Paper [or] Bristol Board." It was classified as bristol board, embossed or decorated, valued at more than 15 cents per pound, within the purview of paragraph 1407(a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, or by the Sixth Protocol of Supplementary Concessions to said General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and, accordingly, assessed with duty at the rate of 1½ cents per pound and 12½ per centum ad valorem, or at the rate of 1.4 cents per pound and 11½ per centum ad valorem, depending upon the date of entry.

It is claimed in said protests that the subject merchandise is dutiable at only 1 cent per pound and 5 per centum ad valorem as vegetable parchment paper, as provided in paragraph 1405 of said act, as modified by said General Agreement on Tariffs and Trade.

Insofar as the claimed provision is concerned, it involves a question which occupied the attention of this and our appellate court in the case of *John J. Coates Co. et al.* v. *United States*, 36 Cust. Ct. 149, C.D. 1768, reversed 44 CCPA 97, C.A.D. 643, and much of the record in the instant case constitutes an attempt on the part of plaintiffs' counsel to establish identity of merchandise and issues to lay the groundwork for incorporation of the record in the decided case.

Thus, Gerald Miner, president of both the Great Lakes Paper Company and the Great Lakes Plastic Corporation, plaintiffs herein, testified that the subject merchandise, which was purchased from Renker-Belipa, GmbH, of West Germany, and is represented by samples in evidence as plaintiffs' exhibits 1–A through 1–F, is the same as that before the court in the *Coates* case and that he based this statement on the fact that, during the years 1951 and 1952, his company had purchased such merchandise from the Arthur Donniger Paper Co. (apparently the ultimate consignee in the decided case), which it subsequently sold. He further testified that the primary use of all of this material is in the manufacture of lampshades and that the salient characteristics rendering it particularly suited to that use are translucency, texture, due to embossing, resistance to dirt and grease, and the lack of fuzz or lint on the surface of the material.

Counsel's motion for incorporation of the record in the *Coates* case was objected to by counsel for the Government, for the reason that the classification of the merchandise in the two cases was not the same. The trial court denied the motion to incorporate the *Coates* case, primarily because the parties there were not the same as those

in the present case. The court noted, however, as another basis for its ruling, the objection raised by the defendant.

· At a subsequent hearing, after a second notice of intention to request incorporation of a prior decision, counsel for the plaintiff moved into evidence the record in the case of *Great Lakes Paper Co. et al.* v. *United States*, 40 Cust. Ct. 509, Abstract 61783, wherein the parties and the classification of the merchandise involved were alleged to be the same as those in the present case.

Counsel for the Government interposed objection to the second motion to incorporate, predicated upon the agreement that there was no independent record in Abstract 61783, but that the case was submitted for decision upon a stipulation that the merchandise and the issues were similar in all material respects to those involved in the *Coates* case, the record in which was therein incorporated. Hence, asserted counsel, an attempt was being made to accomplish by indirection that which the court had held could not be accomplished directly. Nevertheless, and notwithstanding the lack of any evidence purporting to show that the merchandise in the instant case and that in Abstract 61783 was the same, the trial judge granted the motion to incorporate. Essentially, therefore, plaintiffs' case in chief is the record as made in the *Coates* case, incorporated into the record in Abstract 61783, as incorporated herein and amplified by the testimony of the witness Gerald Miner.

Defendant's case consists of the testimony of Foster K. Ballard, Government chemist at the port of Chicago, whose qualifications as a competent chemist, able to make an analysis, were stipulated by adversary counsel. Mr. Ballard testified that he made an analysis of a sheet of paper taken from the instant importations (defendant's exhibit A). He first determined the weight and thickness; thereafter, he removed the resin with which the paper was impregnated, tested it to ascertain whether or not it had been treated with sulphuric acid, and found that it had not been so treated. The tests consisted of determining the bursting strength of the material, before and after the removal of the resin, while in a dry condition, and after the removal of the resin in a wet condition. They showed that the paper did not have a high wet strength after the removal of the resin—"the bursting strength when it was wet was very low as compared with the bursting strength dry in either of the other conditions," which indicated that it had not been treated with sulphuric acid.

The tests were conducted some 8 years after importation, but the witness stated that the lapse of time would have little effect upon the condition of the paper, although, if it had been left out in the light and air for a period of time, it could become "a little more brittle and probably somewhat weaker." The witness' findings as to weight and thick-

ness, and his conclusion that examination of the material showed no evidence of treatment with sulphuric acid, as embodied in his report, dated May 1, 1961, were received in evidence as defendant's exhibit B.

He further testified that he had tested other papers treated with sulphuric acid, which were furnished by the Kalamazoo Vegetable Parchment Co., and represented to be vegetable parchment paper. He admitted, however, that otherwise, and except for reading on the subject, he had no personal knowledge of what vegetable parchment paper is, and that his conclusions as to the limits of bursting strength were based upon his own standards derived from determining the bursting strength of papers represented to be vegetable parchment paper.

Although, as heretofore noted, there is no direct evidence to establish any similarity between the instant paper and that involved in Abstract 61783, it would appear that a *prima facie* showing of similarity sufficient to support incorporation of the record results from the circumstance that, by testimony here and by stipulation in Abstract 61783, both are identified as the same for all material purposes as the paper before the court in the *Coates* case. Moreover, although, as pointed out by counsel for defendant, Abstract 61783 was a decision rendered upon a stipulation of fact, the effect of the incorporation therein of the record in the *Coates* case was to introduce into evidence the entire record as previously made, and, for all purposes, the decision in the later case rests upon that entire record. By the same token, the granting of the motion to incorporate the prior record in the instant case brings before us for consideration all facts established in both the *Coates* and *Great Lakes Paper Co.* cases, *supra*, insofar as they may be applicable to the present merchandise. *Charles H. Demarest, Inc.* v. *United States*, 42 Cust. Ct. 180, C.D. 2084.

The *Coates* case was itself a decision rendered upon an agreed statement of facts. It involved several importations of paper, which were classified in paragraph 1405 of the Tariff Act of 1930, as modified by prevailing trade agreements, as either uncoated paper, embossed, or as greaseproof paper, and were claimed to be vegetable parchment paper within said paragraph 1405, as modified by the General Agreement on Tariffs and Trade, *supra*. This paper was stipulated to have been made by the following process:

* * * cellulose fiber sheets, the same in all material respects as "Exhibit A" were embossed on embossing machines to produce a design and effect previously determined, resulting in embossed sheets which were the same in all material respects as "Exhibit B"; said embossed sheets were stored for several weeks to permit the embossing impressions to become fixed and to dry; the dried sheets were then immersed in a solution of sulphuric acid for the purpose of parchmentizing the sheets; the sheets so embossed and parchmentized were then immersed in successive baths of a resinous solution to permeate and coat the sheets therewith; the sheets were then hung on racks for 10 to 14 days for

drying, after which they were wound into rolls or cut into sheets of predetermined sizes, in which condition they were imported into the United States; "Exhibit C" is a sample of said merchandise as imported.

It was the conclusion of this court, derived from the foregoing stipulation and other physical evidence in the record, that when the embossed sheets of cellulose were taken from the sulphuric acid bath, they had been converted into vegetable parchment paper, embossed, and this conclusion was sustained by the Court of Customs and Patent Appeals. The two tribunals differed, however, with respect to the effect of the resin treatment, this court being of opinion that since the resin had coated the paper, the result was something more than vegetable parchment paper, namely, a surface-coated paper. The Court of Customs and Patent Appeals held otherwise, for the reason that it did not find that the resin treatment caused any significant change in the physical characteristics or utility of the paper, and, although the merchandise was indeed surface-coated paper, the provision for vegetable parchment paper more specifically described it.

Abstract 61783 was a case in which the parties, by stipulation, agreed that the facts and the issues were in all material respects the same as those involved in the *Coates* case, the record in which was received in evidence therein, and invoked the principle thereof for disposition of the controversy.

Counsel for plaintiffs, relying upon the doctrine of *res adjudicata*, with respect to the effect of the decision in Abstract 61783, and of the rule of *stare decisis* on the basis of the decision in the *Coates* case, here contends that the instant merchandise is properly vegetable parchment paper. It is further urged that, in any event, the paper at bar does not fall within the common meaning of the term "bristol board."

As pointed out by the Supreme Court of the United States in the case of *United States* v. *Stone & Downer Co.*, 274 U.S. 225, there are many considerations which militate against the application of the rule of *res adjudicata* to successive importations of identical merchandise, notwithstanding the same issues of fact and questions of law are involved. No useful purpose is here served in entering upon a discussion of the varied reasons justifying a rejection of the rule in customs jurisprudence, for we consider it now to be settled law that *res adjudicata* constitutes no estoppel to a trial *de novo* and reconsideration on the merits for every entry of imported merchandise. *Robinson-Goodman Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 243, T.D. 42842.

So the fact that there have been many decisions holding a particular kind of paper to be vegetable parchment paper neither prevents a reconsideration of the proper classification of such paper nor requires that such classification be absolutely adhered to.

Nevertheless, there is value in the uniformity of decisions, and the requirement of reliance upon precedent, which is the core of the rule of *stare decisis*, is one having an especially salutary effect upon customs transactions. It is important for importers to know in advance of importation to what rate of duty their merchandise will be subjected, and, wherever possible, to establish a classification, and a consequent assessment of duty, that shall be consistent and uniform in its operation. For that reason, *stare decisis* is an eminently desirable principle to be invoked in customs law.

Although every new case should be approached in accordance with established precedents, the rule of *stare decisis* is not inflexible, and where compelling reasons exist, a departure from precedent may well be justified. *Davies, Turner & Company* v. *United States*, 47 CCPA 129, C.A.D. 744.

Moreover, precedents are but the legal principles which ensue from particular factual structures, and their applications to new or different factual situations depend in large measure upon the degree to which the two tend to coincide. If the cases are distinguishable, the prior judicial determination is, of course, irrelevant.

The value of the *Coates* case as a precedent here lies in its holding that sheets of cellulose fiber which have been immersed in a solution of sulphuric acid become vegetable-parchment paper upon their removal from the solution. But this is the very point which is being contested in the instant case, and the mere fact that the records in the *Coates* and *Great Lakes Paper Co.* cases have been received in evidence does not establish that the instant paper has been so treated.

It is true, of course, that the witness for the plaintiff who has dealt in this type of merchandise stated that the present importation was the same kind of paper as that involved in the *Coates* case. But his description of the characteristics which particularly adapt this material to use in the making of lampshades fails to show those characteristics which the evidence in the *Coates* case indicates are distinctive of vegetable parchment paper. We quote from plaintiff's exhibit E in said case, a booklet entitled, "The story of VEGETABLE PARCHMENT," published by the Vegetable Parchment Manufacturers' Association:

* * * Vegetable parchment obtains its properties through a chemical conversion without the addition of any resins. This results in *permanent* high-wet strength and make it the perfect packaging material for wet or moist food products. [Italics quoted.]

\*        \*        \*        \*        \*        \*        \*

Vegetable parchment of normal manufacture has a considerable weight and size range. Basis weights run from 18 lbs. to 110 lbs. per ream (500 sheets size 24" x 36"). Wide mill rolls are adaptable to sizes and shapes for a wide variety of uses.

\*        \*        \*        \*        \*        \*        \*

Just keep in mind the inherent properties of vegetable parchment . . . its wet-strength, grease-resistance, purity, freedom from lint, and printing qualities. * * *

The instant record offers no affirmative proof that the involved paper has been subjected to the action of sulphuric acid in the course of its manufacture. It is left to inference to reason that, since certain other papers are stated to be the same as those at bar, similar manufacturing steps must have been taken to produce it. And, indeed, did this constitute the entire record before us, a *prima facie* showing that the paper at bar is vegetable parchment paper would have been made.

However, we find plaintiffs' proof insufficient to overcome the weight of the testimony given by the witness for the Government, the chemist who analyzed a sample of the imported merchandise. His finding that the sample had a very low wet bursting strength after the resin had been removed indicated to him that the paper had not been treated with sulphuric acid, and since wet strength is one of the predominant features of vegetable parchment paper, his conclusion appears to be justified. Moreover, this material, which was shown to have a basis weight of 225 pounds per 500 sheets of 24 by 36 inches was a far heavier paper than vegetable parchment paper might normally be expected to be.

Since, in such significant respects, the instant paper differs from acknowledged vegetable parchment paper, the court finds it difficult to attach much weight to plaintiffs' witness' statement that it is paper similar in all material respects to that involved in the *Coates* case, and, in the absence of a showing that it has been treated with sulphuric acid so as to become vegetable parchment paper, we are of opinion that plaintiffs have failed to sustain their burden of proof.

Under the circumstances, we need not here consider whether or not this paper was properly classified within the provisions for bristol board. It was incumbent upon plaintiffs not only to negative the finding of the collector, but to establish affirmatively the propriety of the claimed classification. *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325; *Morris Friedman* v. *United States*, 50 CCPA 53, C.A.D. 819. We note in passing, however, that several of the invoices included in the entries here involved describe the merchandise as " 'Safir' Lampshade Parchmentized Bristol Board."

By reason of the foregoing, we find that plaintiffs have failed to establish that the merchandise at bar is vegetable parchment paper, and their claim for classification as such must, therefore, be overruled. Judgment will be entered accordingly.