(C.D. 2592)

Louis Marx & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided November 30, 1965)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *Hadley S. King* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

OLIVER, Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, cover the importation of merchandise, consisting of manual and remote control HO gauge track switches, which were assessed with duty at the rate of 35 per centum ad valorem under the provisions of paragraph 1513, Tariff Act of 1930, as modified by T.D. 52739, supplemented by T.D. 52820, as other toys, not specially provided for. Plaintiff herein claims the merchandise is properly dutiable at the rate of 19 per centum ad valorem under paragraph 397, Tariff Act of 1930, as modified by T.D. 54108, as other manufactured articles not specially provided for, composed wholly or in chief value of iron or steel.

The pertinent provisions of the tariff act are as follows:

Paragraph 1513 of the Tariff Act of 1930, as modified by T.D. 52739 and supplemented by T.D. 52820:

Toys, not specially provided for:

\*       \*       \*       \*       \*       \*       \*
Other_____ 35% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares, not specially provided for, whether partly or wholly manufactured:

\*       \*       \*       \*       \*       \*       \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*       \*       \*       \*       \*       \*       \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \*_____ 19% ad val.

The protests were consolidated at trial (R. 2), and the record in *United States* v. *Polk's Model Craft Hobbies, Inc.*, 47 CCPA 137, C.A.D. 746, was incorporated, without objection (R. 10–11). Plaintiff called one witness and introduced two exhibits.

Mr. Waldemar W. Gryce, an engineer employed by the Louis Marx company for the past 12 years and testifying on behalf of the plaintiff, stated that he was personally familiar with the merchandise represented on the invoices involved herein (R. 6). He proceeded to identify plaintiff's exhibit 1 as a remote control HO gauge track switch that can be operated electrically and plaintiff's exhibit 2 as an HO gauge manual track switch, both of which had been manufactured by and purchased from the Gebr. Fleischmann Co. in Germany (R. 6). The respective exhibits were received in evidence (R. 7). The witness then testified concerning his familiarity with the articles in plaintiff's exhibit 17 from the incorporated *Polk's Model* case, *supra*. He had had samples of these items in his office and knew of other similar type sets (R. 8). He further testified that both the articles in exhibit 17 of the incorporated case and the merchandise in plaintiff's exhibits 1 and 2 in this case are of HO gauge and manufactured by the Gebr. Fleischmann Co. (R. 7–8). It was his opinion that both sets of items were used for HO gauge trains and tracks and that the vehicles in the incorporated case will run on his company's tracks and vice versa. Further, that the switches in plaintiff's exhibits 1 and 2 could be used with the same trains represented in the incorporated case (R. 9). The witness, both verbally and demonstratively, testified to the fact that plaintiff's exhibit 1 would fit the track represented by exhibit 17 in the *Polk's Model* case, *supra* (R. 10). Finally, when asked whether exhibits 1 or 2 in this case could be used with any other gauge equipment, he replied:

Well, there is larger gauge, an O gauge which is twice the width of the HO gauge tracks, and there is a TT gauge, which is much smaller, about half the size of that. Of course, they would not fit together. [R. 10.]

On cross-examination, the following testimony was elicited: That his company sells to toy jobbers and retailers and to hobby shops (R. 15); that the merchandise at bar and, as far as he knew, none of his company's items have ever been submitted to the National Model Railroad Association (hereinafter referred to as the NMRA) for approval (R. 15); that plaintiff's exhibits 1 and 2 are sold in their more expensive type railroad sets (R. 16); that the track switches in issue are manufactured to the specifications of his company (R. 13). *Apropos* of this final fact, the following question and answer ensued:

Q. And are the specifications such that they will be used with these boxes or sets of toys to which you have referred?—A. I would have to say they would have to be used in our HO train sets. [R. 13.]

Mr. Bryce was questioned concerning the specific uses of this railroad equipment and whether it was not, in fact, toy equipment, that is, chiefly used to amuse children. However, as it was developed later in the trial (R. 17) and as recognized in defendant's brief (p. 6), the witness was not qualified to testify concerning the uses of the imported merchandise. He had never seen the equipment used (R. 17) and what is more, his position in the company was as an engineer, presumably not conversant with the particulars of merchandising.

Plaintiff argues that the record, together with the samples of merchandise before the court, establishes the necessary similarity between the present merchandise and that merchandise found to be not classifiable as toys, but rather under other specific provisions of the tariff act, in the incorporated *Polk's Model* case, *supra*. It is the defendant's position that the railroad equipment involved here is not the same as the merchandise covered by the *Polk's* case, *supra*, based on the fact that it has never received NMRA approval, is manufactured to the importer's specifications, and has been used with toy trains, as testified to by plaintiff's witness.

By the incorporation of a record in a previously decided case, the court has before it for consideration all the facts established in the earlier case. *Charles H. Demarest, Inc.* v. *United States*, 42 Cust. Ct. 180, C.D. 2084; *Great Lakes Paper Company et al.* v. *United States*, 52 Cust. Ct. 64, C.D. 2438. That is not to say that the doctrine of *stare decisis* will have automatic application, C.D. 2084, *supra*. Parties may claim that the previous holding was erroneous, urge a new theory of law, or show that the merchandise was different in kind from that now in issue, *Manca, Inc.* v. *United States*, 47 CCPA 103, C.A.D. 738; *Demarest, Inc.*, *supra*. However, in the present litigation, the correctness of the decision in the incorporated case has not been challenged nor has a new theory been urged; therefore, if we find the instant merchandise to be of the same type or kind as that in the incorporated *Polk's* case, *supra*, we shall be obliged to follow the holding therein, *Manca, Inc.*, *supra*.

Plaintiff's engineer witness put forth testimony that the track switches in this case and the track equipment in the *Polk's Model* case, *supra*, as represented in exhibit 17 of that case, were of the same type of manufacture, built by the same manufacturer, and capable of the same end uses and in the same manner. Defendant's main contention for dissimilarity appears to be that the instant merchandise had never been approved by the NMRA, while the merchandise in the incorporated case was manufactured to the rigid standards of that association. Therefore, the argument concludes, the court is dealing with two distinct types of merchandise.

With this contention, we cannot agree. It was developed at the trial that the involved merchandise had never been submitted to the

NMRA for approval, and not that it was not approvable. The inference drawn from this factor is almost neutral in effect and far from the devasting implications attributed by the defendant. Furthermore, the merchandise in the *Polk's* case, *supra*, was characterized as having been built according to the rigid standards set up by the NMRA. This is not the same as saying that formal approval by the NMRA marked the class of articles encompassed in that case. A manufacturer can build to these known specifications without having his merchandise formally approved. It is also significant that the manufacturer in both instances is the same. Of course, it is quite possible for a manufacturer to produce two types or classes of merchandise, but such an inference cannot be drawn from this record. Moreover, as noted in the *Polk's* case, *supra*, the purpose of setting NMRA standards is for interchangeability of equipment among different manufacturers. Here, we have a known and previously approved manufacturer as the seller of both sets of equipment, and the unrebutted testimony of plaintiff's witness that trains, locomotives, and cars can run interchangeably on the track merchandise in the test case and on the track sections in this case.

Defendant also maintains that the merchandise at bar, manufactured specifically for the plaintiff-importer, lacks interchangeability with the track sections in the incorporated case and is, therefore, not of the same class or kind. On this point, the testimony of the witness seems somewhat contradictory or vague at best. At one point, the witness testified that the track switch sections could be used with the track in the test case. The witness at trial and the court in chambers have successfully demonstrated that the two pieces of track do fit together. Later, however, on cross-examination, the witness stated that exhibits 1 and 2 would have to be used on his company's train sets. Whether he was referring to degrees of efficiency or outright capability, is not clear. While demonstrative evidence is usually more convincing than verbal, at best, this indicates that not every piece of model railroad equipment manufactured for the Louis Marx company is perfectly interchangeable with those manufactured for other companies. We do not read the *Polk's* case, *supra*, as requiring such a result. The fact remains, however, that substantial parts of the merchandise in that case, viz, locomotives and cars, are completely interchangeable in use with the track switches in this case.

The test for similarity of articles belonging to the same class of merchandise, outside of evidence of particular use, can take into account factors of shape, design, and construction, *United States* v. *The Baltimore & Ohio R. R. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719. The vast record of established facts in the *Polk's Model* case, *supra*, is more revealing on this issue of similarity

than a brief statement concerning NMRA standards. It is readily discernible from the more extensive opinion of the lower court in the *Polk's* case, *supra*, that the model railroad equipment before the court, there consisting of model locomotives, cars, tracks, switches, and many other accessories, possessed a rather fragile and delicate construction, with built-in detail for more complete simulation to actual railroad systems. Also, the very size of the track demanded a certain degree of mechanical and sometimes electrical ability. It has always been recognized in our courts that the sample merchandise itself bears cogent witness on the question of similarity, *United States* v. *Colibri Lighters (U.S.A.) Inc.*, 47 CCPA 106, 109, C.A.D. 739; *United States* v. *E. B. Miller Associates, Inc., J. M. Rodgers Co.*, 43 CCPA 14, 18, C.A.D. 603. Not only do the sample track switches before this court in plaintiff's exhibits 1 and 2 seem to be of rather delicate construction with replica detail in design and operation, but also when compared with the sample track sections in exhibit 17 from the test case, the visual similarity is striking. Moreover, the very nature of the articles contained in plaintiff's exhibits 1 and 2, whether used manually or, *a fortiori*, by remote control, suggests a more or less sophisticated function for the maneuvering of trains from one track to another. We conclude that the factors of similarity outweigh those of dissimilarity. Therefore, on the record as presented to this court, we hold the present merchandise to be similar in all material respects to the class of articles in the incorporated *Polk's Model* case, *supra*.

Even if the sole witness in the new case had knowledge qualifying him to testify as to chief use, which he admitted he did not have, still his testimony would have gone only to show an occasional use, one which was no more than "a fugitive use or a mere susceptibility or capability of use." *Baltimore & Ohio R. R.* case, *supra*.

Finally, defendant argues, in its brief, the importations of the instant merchandise were at different times than those involved in the test case and chief use is to be determined as of the time of importation. We find little to justify this argument. As of a relatively brief 6 years ago, the class of articles to which the instant merchandise belongs was found to be not chiefly used for the amusement of children. There is not the hint of evidence in the record to indicate that conditions have changed. In such a case, it is quite in order for the court to infer that the chief use of this type of merchandise is the same today as it was 6 years ago. See *F. W. Myers & Co., Inc.* v. *United States*, 29 Cust. Ct. 212, C.D. 1470. Moreover, based on the well-reasoned opinion in the *Demarest, Inc.*, case, *supra*, by agreeing to incorporate the record in the *Polk's* case, *supra*, the parties acknowledge that the same testimony would be repeated for application to the present controversy.

We hold, therefore, that the involved track switches in this case, being similar in all material respects to those articles under decision in the *Polk's Model* case, *supra*, are not classifiable as toys but, following the holding in the test case, are dutiable as other manufactured articles, not specially provided for, in chief value of iron or steel under the provisions of paragraph 397, Tariff Act of 1930, as modified by T.D. 54108, carrying the dutiable rate of 19 per centum ad valorem, as claimed by plaintiff. The protests are sustained and judgment will be rendered accordingly.